Lower
v.
Winters.

LOWER *against* WINTERS.

ON error from the common pleas of Jefferson county. The action was on a parol contract to pay for improvements on land; and was tried in the court below, at their June term, 1826; when a verdict and judgment were rendered in favor of Winters, the plaintiff below. A bill of exceptions was taken at the trial, upon which the writ of error was founded; and the substance of which, with the points made, and authorities cited by counsel, will be found stated in the opinion of the court.

*W. D. Ford,* for the plaintiff in error.

*\*T. C. Chittenden,* contra.

*Curia, per* SUTHERLAND, J. It has been repeatedly held by this court, that a parol promise or agreement to pay for the improvements on land, is not within the statute of frauds. Improvements upon land, distinct from the title or possession, are not an interest in land, within the meaning of the statute. They are only another name for the work and labor bestowed on the land; and a parol promise to pay for work already done, or to be done upon land, never has been held to come within the statute. (*Frear* v. *Hardenburgh,* 5 John. 275; *Benedict* v. *Beebee,* 11 John. 145.) In *Howard* v. *Easton,* (7 John. 205,) the contract was for the sale of the possession, and improvements. This was held to be within the statute. The court remark, that possession must be considered an interest in land. It is *prima facie* evidence of title.[1]

*Margin note:* A contract, by parol, to sell the mere improvements made on land, is not within the statute of frauds, as to the subject-matter; and may, therefore, be enforced by an action. But where the agreement was in January or February, to pay for the improvements one year from [*264] the next following March; *held,* that the contract was within the statute of frauds, as a contract not to be performed within a year. The declaration was on a promise to pay $100 for improvements. Proof of a promise to pay if the promisor should obtain a contract for the land. *Held,* a fatal variance. Great latitude is allowed on the cross-examination of witnesses. Thus, where a witness stated that the character of one of the defendant's witnesses was bad in point of truth and veracity; *held,* that he might be inquired of by the defendant, as to the particular persons he had heard impeach the character of the witness.

[1] A parol agreement that a party may abut and erect a dam upon the lands of another, not for a temporary but a permanent purpose, as the creation of a water power for the use of mills and other hydraulic works, is void within the statute of frauds. *Mumford* v. *Whitney,* 15 Wen. 380.

An agreement to remove a fence and open a road, is not an agreement

In the case at bar, the contract, as proved, was this
The plaintiff said to the defendant, " you can have my im-
provements for $100; and I retain possession of the land
next season ; the 100 dollars to be paid in stock in one
year from March next." The defendant said, " I will give
it, if I can get a contract from Pierpont, the landlord." It
is manifest that the plaintiff did not undertake to sell, nor
the defendant to purchase any interest in the land. That

concerning an interest in· land. *Storms* v. *Snyder*, 10 J. R. 109. Grow-
ing trees, fruit and grass, are real estate, parcel of the land—therefore
within the statute of frauds; and cannot be sold by parol until actually,
or in contemplation of law, severed from the land; therefore a parol turning
out of such property by defendant to a sheriff on an execution will not sus-
tain a levy; it is void, and inoperative against a levy made subsequently,
after a severance of such property from the soil. Constructive levies upon
other executions dependent on the original void levy would also be void.
Growing trees, fruit and grass, may be sold by deed, or the land may be sold,
and those reserved; either course works a severance in law from the land,
and changes the character of the property from realty to personalty. So such
property may be mortgaged, but the change in its character does not occur
until the forfeiture of the condition of the mortgage; when it would become
the chattel property of the mortgagee. *Bank of Lansingburgh* v. *Crary*,
Barb. 542.

An agreement for the sale of growing trees, with right to enter at a future
time, and take them away, must be in writing, because natural products are
parcel of the land; but annual products raised by human industry, such as
grain, are personal chattels, and not within the statute. *Green* v. *Armstrong*,
1 Denio, 550.

A growing crop may be sold by parol. *Newcomb* v. *Ramer*, 2 J. R. 421

Wheat growing is a mere chattel, and the property in it will therefore pass
by parol and without writing, the statute of frauds not applying to such a
case. *Austin* v. *Sawyer*, 9 Cow. 39.

A promise to pay the owner of land a specific sum, on his consenting to
have a public road or highway laid through his lands, is not within the stat-
ute of frauds, and may be enforced by action, if such road be laid out and
occupied as such. *Noyes* v. *Chapin*, 6 Wen. 461.

A contract made by the owner of land with the defendants, in respect
to the use of the banks of a river for the purpose of widening the stream;
for which the defendants were to pay a compensation for the damages;
the owner also agreeing to allow them to cut a canal through the lands; -
held, that this was an interest in lands. *Phillips* v. *Thompson*, J. C. 131.

A promise or undertaking by the defendant to pay for improvements made
by the defendant on the land where the vendor had abandoned the original
contract, is not within the statute. *Benedict* v. *Beebee*, 11 J. R. 145; *Frear*
v. *Hardenburgh*, 5 J. R. 272. (N. Y. Dig. Vol 2, p. 1242; *et seq*. tit. *Frauds*.)

the defendant expected to obtain from the landlord; and his contract for the improvements was upon the condition of his being able to purchase the land from the owner. It was a contract, therefore, for the improvements merely; and was valid as to the subject matter, though not in writing.

But it is objected that the contract was not to be performed within a year, and is therefore void, not being in writing. It was made in January or February, 1824. The plaintiff was to retain possession during the next season; that is, as explained by the witness, until March, 1825. The defendant was to pay $100 in stock in one year from March succeeding the making of the contract. This certainly is a contract not to be performed within a year. The terms are clear and explicit. It depended on *no contingency. It was not in the power of the defendant to perform before the 1st of March. A tender before that time would not have been good. The plaintiff would not have been bound to accept payment before that day. It seems to me to come within the terms of the statute, and the adjudications upon it. (10 John. 244; 1 Salk. 280; Skin. 353; Holt, 326; 3 Burr. 1278; 1 Bl. 353; 1 Com. on Contr. 87, 88.) The court below erred, therefore, in not nonsuiting the plaintiff.

[*265]

The contract proved, is so essentially different from that declared on. The declaration states the promise on the part of the defendant, to have been absolute and unconditional. The promise proved, was to give $100 for the improvements, if he obtained a contract from the landlord. If he failed in obtaining a contract, he was not bound by his promise to the plaintiff. That was the express condition upon which it was made. It is true the plaintiff proved upon the trial, that the defendant had obtained a contract from Pierpont. But the fact of proving it shows its materialty; and that it ought to have been averred. The plaintiff has recovered on a contract entirely different from that on which he declared. The objection was taken below, and should have been sustained. (1 Chit. Pl. 309;

7 Co. 10 ; Com. Dig. Pleader, (C. 51,) Doug. 686 ; 1 T. R. 638.)

The court also erred in overruling the question put by the defendant's counsel to Combs, one of the plaintiff's witnesses, upon his cross-examination. On his direct examination, he had testified that the general reputation of Seeber, (one of the defendant's witnesses,) in point of truth and veracity, was bad. He was asked by the defendant's counsel, if he had heard any body say that his general reputation was bad. He answered that he had heard several persons say so. He was then asked to name them. The question was objected to by the plaintiff's counsel, and overruled. The defendant had a right to press the examination for the purpose of testing the accuracy of the witness. He might have contradicted himself. The individuals

[*266]

from whom heard the observations *may have been the personal enemies of the witness impeached.

Great latitude is allowed upon the cross-examination of witnesses. But it does not appear that the testimony of Seeber, the witness impeached, was at all material. What it was is not stated. I should not, therefore, be inclined to reverse the judgment on that ground.

This last decision of the court was the only one to which an exception was taken in terms ; but this defect in the bill of exceptions is not objected, on the part of the defendant in error.

Judgment reversed.