REUBEN ROBINSON, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. To authorize a witness to testify as to the reputation of another for truth and veracity in order to impeach him, it is not necessary that he should know what a majority of his neighbors or associates say or think of his character for truth.

2. If a witness testifies that he knows the reputation for truth and veracity of the party to be impeached where he lives, the questions as to whether that reputation is good or bad, and whether from that reputation he would believe him under oath, are proper.

3. The opposing party can, upon cross examination, ascertain the extent of the information of the witness, and the sources of his knowledge

Writ of error to the Circuit Court for Suwannee county. The facts of the case are stated in the opinion of the court.

*White & Bryson* for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

MR. JUSTICE VAN VALKENBURGH delivered the opinion of the court.

The plaintiff in error was indicted at the Fall Term of the Circuit Court, held in and for the county of Suwannee, in the year 1877, for the murder of one Henry Harrison. The record shows that he was arraigned and plead not guilty. The trial before a jury was commenced on the 4th day of February, 1878, and such proceedings were had that on the 8th day of February the jury found the plaintiff in error guilty of murder in the first degree.

The counsel for the prisoner then made a motion for a new trial upon several grounds of alleged error in the progress of the cause, as well as upon the ground of newly-discovered evidence, which motion was denied by the court, and

the prisoner was sentenced in pursuance of law. From this judgment the prisoner brings his writ of error to this court, and causes his bill of exceptions to be filed.

The assignment of error contains twenty-one grounds, upon which the judgment of the court below is asked to be reversed.

Upon an examination of the record, we find that this court cannot consider many of the errors so assigned, for the reason that the bill of exceptions does not show that the necessary exceptions were taken to the rulings and charge of the court in such way or time as is required by the rules and previous decisions in such cases. The errors which we do consider in such rulings by the court below, are enumerated and stated in such assignment of errors as follows :

VII. Because the court erred in allowing the State solicitor (after A. A. Blackburn, a witness for the prisoner, had sworn that he knew Adam Tyson's reputation for truth and veracity where he lived,) to stop said Blackburn from further testifying in chief, until he should answer the following question affirmatively : " Have you heard a majority of his neighbors and associates speak of his reputation for truth and veracity ?"

VIII. The court erred in overruling the objections then and there raised by prisoner's counsel to said question and proceeding in stopping the examination in chief and in allowing said question to be asked.

IX. The court erred in refusing to allow A. A. Blackburn to testify to the reputation of Tyson, a State witness, for truth and veracity, after said Blackburn had said he knew Tyson's reputation for truth and veracity where he lived, until said Blackburn could first say that he had heard what a majority of his neighbors and associates speak of the same.

X. The court erred in allowing the State solicitor to stop James B. Hull, witness introduced by prisoner to impeach the reputation of Adam Tyson, a State witness, after said

Hull had testified "that he had known Tyson for several years, and had heard a great many persons speak of his reputation for truth and veracity," from further testifying in chief, until he could say he had heard a majority of his neighbors and associates speak of his veracity, and allowing the State solicitor then and there to ask said question, before said witness should be allowed to finish his testimony in chief.

XI. The court erred in that the court did not then and there sustain the objection made by counsel for the accused then and there made to the asking of said question, but allowed the said question to be asked by the State solicitor, and the said witness stopped from further testifying in chief, until said question should be answered affirmatively.

XII. The court erred in refusing to allow said James B. Hull to testify as to the reputation of Adam Tyson for truth and veracity after said Hull had said he had known said Tyson for several years, and after he had said that he had heard a great many persons speak of his reputation for truth and veracity, unless he could first say that he had heard a majority of his neighbors and associates speak of his reputation for veracity.

The bill of exceptions shows that A. A. Blackburn was sworn as a witness on the trial of the cause upon the part of the defence. He testified: "I know Adam Tyson well; have known him for two or three years; I know his reputation for truth and veracity where he lives." At this point the State solicitor stopped the witness and asked him a question, as follows: "Have you heard a majority of his neighbors and associates speak of his reputation for truth and veracity?" To the asking of which question the counsel for accused then and there objected. The objection was overruled, and the counsel for the accused excepted to the ruling of the court. The witness then answered: "I do not know what a majority say; I know what a good many say; I know

what I think of him." The witness was stopped by the court, which held that if he had not heard a majority of his neighbors and associates speak of his reputation for truth and veracity, he was not a competent witness to impeach the witness', Adam Tyson, reputation for truth and veracity. To which ruling of the court the counsel for accused excepted.

James B. Hull was also called upon the part of the accused, for the purpose of impeaching the same Adam Tyson, and after testifying that he had known Adam Tyson for several years, and that he had heard a great many persons speak of his reputation for truth and veracity, was stopped to have propounded to him the same question put by the State solicitor to the witness Blackburn. Counsel for the accused objected to such question. The objection was overruled and an exception taken. This witness also testified that he had heard a great many persons speak of his reputation for truth and veracity, but he could not say that he had heard a majority of his neighbors and associates speak of the same.

The court then ruled that the witness could not depose as to the reputation or character of said Adam Tyson for truth and veracity, on the ground that he had not heard a majority of his neighbors or associates speak of the same; to which ruling of the court counsel for the accused then and there excepted.

The exceptions taken to the rulings of the court, shutting out the evidence of the witnesses, Blackburn and Hull, who were introduced to impeach the witness Tyson, he having given material evidence on the part of the State, raises the question whether before testifying as to his character for truth and veracity, they must show that they had heard a majority of his neighbors or associates speak of such character. We cannot believe that this is the true rule in cases of impeachment. It is not necessary to establish a character,

either good or bad, that it should have been the subject of conversation between a majority of a person's neighbors or associates, and that they should have expressed an opinion thereon.

In the case of Dave vs. The State, 22 Ala., 23, the judge said " that a witness was competent to speak of another's general character without being able to say that he knew what a majority of the neighbers of the person, whose character was the subject of inquiry, said of him or thought of him." It may so happen that a " man has a reputation well established, either good or bad, and yet a majority of his neighbors may never have spoken upon the subject, or expressed their thoughts in any manner whatever. Again, there may not have been a majority who have expressed an opinion to the witness, nor may he be able to say, with positive knowledge, what a majority think, nor may he have heard any one else say what a majority said or thought, and yet himself be competent to swear what his general reputation is. A person's position in a community may be so obscure that very few of his neighbors know anything of him. His general character may be very circumscribed. To hold' that he could not prove his general character, except by witnesses who could swear as to what a majority of his neighbors said or thought of him, would be to deprive him of this species of testimony."

This we believe to be the true rule. In the case here the witness Blackburn had sworn that he knew Adam Tyson's reputation for truth and veracity where he lived. The witness Hull had said that he had known Tyson for several years, and had heard a great many persons speak of his reputation for truth and veracity. The foundation for proving what that reputation was had been sufficiently laid, yet the court refused to allow the prisoner's counsel to proceed until it should appear that each of these witnesses had heard

a majority of Tyson's neighbors or associates speak of his veracity.

Had the proper ruling been made by the court, the question might have been asked by the prisoner's counsel whether that reputation was good or bad, and whether from such reputation they would believe the witness, Tyson, under oath? The opposite party then, upon cross-examination, could have ascertained the extent of the information of the witnesses and the sources of their knowledge. Crabtree vs. Hagenbaugh, 25 Ill., 233; Boon vs. Weathered, 23 Texas, 675.

The cases of Gladen vs. The State, and Dixon vs. The State, both in 13 Fla. Reports, and Dukes vs. The State, in 14 Fla., cover substantially the other questions sought to be raised by plaintiff in error.

The judgment reversed and new trial ordered.