STATE EX REL. A. N. EDWARDS VS. THE COUNTY COMMIS-
SIONERS OF SUMTER COUNTY, RESPONDENTS.

1. The pleadings in mandamus make an issue of fact as to whether certain names appearing on a petition under the act of 1883, chapter 3416, for a permit to sell liquors, and necessary to constitute a majority of the registered voters of the election district, are the authorized signatures of the persons represented by such names. Upon such an issue a person of a name similar to one so appearing on such petition was called as a witness in behalf of the respondents, and testified that he was a registered voter of the election district, but that he neither signed nor authorized any one to sign his name to the petition, and it was shown that but one similar name appeared on the list of registered voters of the district, and there was no evidence in rebuttal of his testimony, except that the original petition was admitted in evidence without proof of the genuineness of such signature either by any witness thereto or by other legal testimony : *Held*, That the signature was not valid as that of a legal petitioner under the statute.

2. The applicant for a permit to sell liquors should, before making the affidavit required by the statute, know of his own knowledge that the petitioners have signed, and did so in the presence of two witnesses, and should have such personal knowledge of the circumstances of their signing as will enable him to swear in good faith that none of the means prohibited by the statute have been used in procuring their signatures.

3. The testimony in the case held to not only establish that a majority of the registered voters of the district did not sign the petition, but also to show otherwise a *prima facie* case violative of the statute.

This is a case of original jurisdiction.

For opinion on motion to quash respondents' first return to the alternative writ, see page 1, *supra*.

The facts of the case are stated in the opinion.

*H. H. Herndon, Calhoun, Davis & Gillis* and *Tipton Bradford* for Relator.

*Hocker & Mabry* and *J. R. Gaines* for Respondents.

MR. JUSTICE RANEY delivered the opinion of the court:

After the opinion on relator's motion to quash was filed, the respondents, pursuant to leave from the court, filed an amended return denying that the petition was signed by a majority of the registered voters of the election district; and alleging that thirty-five persons, whose names are given, did not in fact sign it; and charging that the signing of their names or making of their marks, as they appear on the petition, was not the act and deed of such persons; and alleging that without such names there are not a majority of the registered voters on the petition. Upon this return the relator has joined issue. It is alleged in the alternative writ, and admitted by respondents, that the number of registered voters on October 16, 1885, the day the petition was filed with the County Commissioners, were five hundred and thirty-four. Such petition purports to be signed by two hundred and seventy-seven registered voters. Two hundred and sixty-eight constitute a majority. If ten of the names upon the petition are there without authority from the persons they purport to represent, there is not a majority of the registered voters petitioning, and then, consequently, the relator's case must fail.

William Thompson, Ed. Rivers, Henry Freeman, Mitchell McCollum, G. H. Jackson, Gus Johnson, G. W. Butler, Isaac Williams, Willis Williams, Thad. Erwin and H. D. Byars, who are among the thirty-five persons mentioned in the return, were introduced as witnesses upon behalf of the respondents, and each testified that he was a registered

voter of the district, and that he neither signed the petition nor authorized any one to sign it for him. Corresponding names appear in the list of registered voters of the district, but no one of the same names appears more than once. Such of these witnesses as were questioned upon the cross-examination, as to whether there was any other person of the same name in the district, stated each that he neither knew or had heard of any such person. Rivers says he was asked by Sam Turner to sign, but told him he was a Methodist preacher and did not want to do so. Freeman says he was requested to sign, but refused. Thompson, Rivers, Jackson and Johnson, respectively, swear they can write. Murden, a witness, swears he saw Butler sign the registration book with his own hand, yet none of these five but Jackson is represented to have signed for himself, but the signatures are by making a cross mark. The relator introduced no testimony in rebuttal of the above, not even the persons who appear on the petition to have witnessed the alleged signatures. The conclusion necessarily follows that these eleven persons never signed the petition, but their names thereto are [forgeries and the relator is not entitled to relief.

There are other features of the case as shown by the record, which should be noticed.

Gib Taylor and Thomas Coby, who have lived in Hernando county two and five years, swear they were registered voters of the district before leaving Sumter county, and that they did not sign or authorize their names to be signed to the petition. Similar names appear upon both the petition and the registration list. They never knew of any other persons of the same names in Sumter county.

The name of S. P. Fuller appears on the petition. No such name appears on the registration list of the voters of the district, but the name of Spencer Fuller does appear on

it. Spencer E. Fuller was introduced as a witness and testified that the name Spencer Fuller, on the registration list, is his and in his own hand writing, and that he never signed or authorized any one to sign the petition for him.

H. C. Edwards testifies that he witnessed the signature of B. W. Goldwire to the petition ; wrote the name of B. W. Goldwire himself and witnessed it. It is signed with a cross-mark. Upon an inspection of the petition we discover that the B has been changed to an R, and after the R there has been interlined, in red ink, the letters " eding,' and the W has been erased. Thus the name has been changed to Reding Goldwire. The name of Reding Goldwire appears on the registration list, but that of B. W. Goldwire does not appear on it. Edwards says these alterations were not made by him. His name still appears as one of the witnesses.

Wm. Alexander—who, according to his testimony, is a person who is a registered voter in the district in question, and who comes and goes between Lake City (which is in another county) and Sumter county, he coming to Sumter whenever there is work, and living in both counties and calling Lake City his home, and who, when he is at Lake City, is allowed vote, and if he is at Leesburg and there is an election and he feels like it, puts in his vote, and who does not vote at both places, as when he votes " here " he does " not vote there,"—testifies that he did not sign the petition, nor authorize any one to sign it for him, nor did any one ask him to sign it or present it to him. The name appears upon the petition and the registration list.

There is testimony to the effect that the signatures of W. H. Byrd, E. W. Davis, Ephraim J. H. George and C. A. Helms are not genuine, and that they and other persons whose names appear on the petition left the county before the petition was started.

J. R. Cunningham, who was the chairman of the Board of County Commissioners during the year 1885, testifies that the relator was asked by him at a meeting of the Commissioners in December of that year how he got the name of E. W. West (which was on the original petition, but was not published) who had left the county in January of the same year, and he replied that he did not know; that he got others to get up the petition for him. Cunningham also says there was something said about affidavits filed before the board by certain persons, to the effect that they had not signed the petition, and the relator's explanation was that he knew nothing about their names personally, that he got others to get up the petition and they made affidavit that it was all right, and then he made his affidavit on the strength of them.

There is no testimony upon the part of the relator on any of these points. No attempt is made to show that the Gib Taylor and Thomas Coby who testified are not the persons who signed the petition. It is not pretended that there was a registered voter of the name of S. P. Fuller. The change of the name of B. W. Goldwire to that of Reding Goldwire is not explained, but it still stands in red ink with its fraudulent presumptions under the evidence. Though in which of the two counties it is Wm. Alexander's legal right to be a registered voter and to vote when he " feels like it " cannot be properly settled here, yet no one has been produced to say that he was ever even requested to sign the petition.

It is a fact that none of the subscribing witnesses to the signatures whose genuineness has been questioned, have been adduced to prove that which the fact of their names standing in the witness lines of the petition would seem to imply. I do not admit that any *prima facie* case has been made by a relator

in a case like this, upon similar issues, until this has been done; but assuming that a mere presentation of a petition, verified by the applicant for a license, does upon such an issue throw the burden upon the respondents, we are all of the opinion that the testimony in this case not only shows that a majority of the registered voters of the district have not signed the petition, but it makes out a *prima facie* case of fraud in getting up the petition, and one which in law necessarily attaches itself to the attempt to obtain a permit from the County Commissioners upon such petition. It is certain as to eleven or more of the signatures discussed that they are not the act and deed of the parties purporting to have signed them, and as to most, if not all others, the burden in view of all the testimony has been cast upon the relator to show that they were genuine, and he has not responded to the call thus made on him.

The testimony of Mr. Cunningham shows that when the relator made the oath annexed to the petition: "That every name or mark affixed to the foregoing petition was the act and deed of the parties purporting to have signed the same; that each signature or mark was subscribed in the presence of two witnesses, and that there was no fraud, bribery or deception in procuring said signatures or marks to such petition," that *he swore to that which he* did not know of his own knowledge, to be true even had the statements of the affidavit been true in fact. Without saying that the affidavit must contain the statement that the signatures were made in the presence of two witnesses, though they must in fact be so made, we do not think that it is a compliance with either the spirit or letter of the statute that there should be merely ignorance, on the part of the applicant for a license, of any irregularity or that such ignorance enables him to make the required affidavit.

24

He should know of his own knowledge that the petitioners have signed, and he should not base his affidavit of the absence of fraud, bribery or deception upon the statements of others whom he may have procured to get names for him. He should have such connection with procuring the names as will enable him to swear in good faith, from personal knowledge of the circumstances, that none of the prohibited means have been used. The observations in this paragraph are not intended to intimate that the applicant had any knowledge of the irregularities or acted in bad faith in making the affidavit.

The judgment of the court will be that the respondents go without day, and that they recover their costs which will be taxed by the clerk. Tucker vs. Justices, 1 Jones, 451; High on Extra. Rem., 526.

It is so ordered.