STATE EX REL., PERRY DAVIS, RELATOR, VS. J. W. NEWMAN, RESPONDENT.

1. The statutes regulating writs of error in criminal cases prescribe the manner in which such writs may be allowed and they cannot be allowed in any other manner.

2. The provisions of such statutes do not impose the payment of costs upon the State.

3. Such statutes do not require a clerk of the Circuit Court to furnish a person convicted of a criminal charge a transcript of the record necessary for obtaining a writ of error, without being paid for the same, where such person has not taken the steps required by law of an insolvent to have his costs taxed against the State. Whether the taking of the latter steps make it the duty of the clerk to furnish such transcript, at the cost of the State, not decided.

4. The words "final trial" in section 11 of the Declaration of Rights, providing that "no person shall be compelled to pay costs except after conviction on final trial," mean such a trial in the court having original trial jurisdiction of the case, as is the basis for the entry of judgment finally disposing of the action in such court, and does not apply to proceedings in an appellate court.

5. Such section of the Declaration of Rights does not prohibit the clerk from requiring of a person convicted of a criminal charge cash payment for such a transcript.

This is a case of original jurisdiction.

This is a proceeding by mandamus. The alternative writ alleges that the relator was indicted and tried at the fall term, 1887, of Suwannee county Circuit Court for an assault with the premeditated design to effect the death of one Randle Farnell; that the jury rendered a verdict of guilty, and that a motion for a new trial made by him having been overruled and excepted to, and an order having been made allowing time for settling a bill of exceptions, judgment or sentence was passed upon him; that thereupon he filed an affidavit of insolvency setting forth his inability to pay costs, and that the court being satisfied of his insolvency, and he executing a good and sufficient bond in terms of the law to abide by the ruling and decision of this, the Supreme Court, and to appear before the Circuit Court, a supersedeas was granted; that he has applied to respondent, the clerk of said Circuit Court, as the law directs, for a transcript of the record, and that the respondent refused and still refuses to furnish the same; that relator has prepared his bill of exceptions and the same has been signed and sealed by the Judge within the time allowed, "but for want of a transcript of the record the Judge could not allow a writ of error to the Supreme Court." The command of the writ is that the respondent make a true and perfect transcript of the record in the said case, duly certified and sealed, and to deliver the same to said Perry Davis, or show cause before this court at the day and hour therein stated why he should not do so.

The return admits the indictment and trial and the sen-

tence (stating it to be confinement in the State's Prison at hard labor for the term of two years, and supporting the statement by a certified copy of the same,) and the refusal of the motion for a new trial, and the exception to such refusal, and the allowance of thirty days time for settling a bill of exceptions. The return also states that the relator thereupon filed in open court, for the purpose of obtaining a supersedeas, an affidavit made by him, in which he deposed that he had no property or other means in his possession or under his control with which to pay the costs that had accrued or should thereafter accrue in the action, and that he was utterly unable to enter into the recognizance required to secure the pre-payment of the same, and that he had not divested himself of his property for the purpose of receiving benefit from the said oath, but that the facts stated were true to his knowledge; and the return further states that after filing the said affidavit, the relator procured an order for a writ of error and supersedeas. A certified transcript of the proceedings of the Circuit Court, accompanying the return as a part thereof, shows that the relator " applied for and obtained a writ of error " to the judgment, and shows also an entry that upon his "making an insolvent affidavit, and a bond for $250, to be approved by the court, a supersedeas will issue."

The return further states that after the adjournment of the Circuit Court the relator, by his attorney, applied for a transcript of the record in the cause, and then and there stated to respondent that the relator would not pay the cost of the same, but that respondent must look to the State for pay for the same. Respondent says that upon such statement being made he refused to deliver the transcript to the relator because the latter did not make proof of his insolvency, and procure from the Circuit Court an order that the costs in the cause be paid by the State, but

that instead of relator presenting satisafactory evidence to the court of his insolvency, the relator procured the attendance of his witnesses to the number of two, for the purpose of his defence, and made no complaint to the court that he was unable to pay them for their attendance, or for procuring their attendance.

It further states that the relator did not until January 8th, 1888, file in the respondent's office the bill of exceptions signed and sealed by the judge, and that when respondent refused to deliver a transcript of the record the bill of exceptions had not been settled and signed.

The petition for the alternative writ was filed January 11th, 1888, and such writ issued the same day and was served on the 13th day of the same month.

*J. C. Gallaher* and *R. W. Williams* for Relator.

*B. B. Blackwell* and *J. S. White* for Respondent.

MR. JUSTICE RANEY delivered the opinion of the court:

The act of January 4th, 1848, (Chapter 138, Laws of Florida,) provided that any party convicted of crime or misdemeanor, not capital, should be entitled to a writ of error upon complying with the following terms: " He shall obtain from the clerk a duly certified copy of the record in the case and present the same, with an assignment of the errors relied on, to the Supreme Court or to one of its Justices; and if such court or Justice, upon an inspection of the record, shall be of the opinion that there is just cause for allowing a writ of error, he shall so endorse on such record; and thereupon a writ of error shall issue from either the Circuit or Supreme Court." Its provisions as to capital cases were different.

In 1861 the above act was, however, so amended by

chapter 1104 as to provide, 1st, that writs of error in capi. tal cases should be allowed only in the manner and upon terms provided by law for such writs in cases of misde: meanor and crimes not capital ; and secondly, that Circuit Judges should have the same power in allowing writs of error in such cases as Justices of the Supreme Court then had.   In 1866 it was provided by chapter 1561 that the Judges of the Circuit Court should have power to issue writs of error in vacation as well as in term time.   These acts of 1861 and 1866 gave the Circuit Courts and Judges the same power as the original act of 1848 gave the Su- preme Court and each of its Justices, and the act of 1861 took from writs of error in capital cases the character of writs of right, and put them upon the same footing, as to their issuance, as those in cases not capital.

The act of 1848 makes express provisions as to when and under what circumstances writs of error in criminal cases, of all grades triable by Circuit Courts, shall operate as a supersedeas to the execution of the sentence or judg- ment sought to be reviewed.

It may (section 4) be by the plaintiff in error paying all costs which have accrued up to the time, and by securing recognizance to be entered into with one or more sureties before the Clerk of the Circuit Court in a sum sufficient to secure the payment of the judgment, fine and future costs as may be adjudged and affirmed in the Supreme Court and conditioned to be personally forthcoming to abide the judgment of the Supreme Court, and in case the cause is remanded to the Circuit Court to personally appear at its next term to answer and to depart not without leave.   If at the time of obtaining the supersedeas in the above man- ner the convict is in custody under the sentence of convic- tion, he still cannot be discharged from such custody

except by an order of the court or of the judge or justice allowing the writ, and such an order can be made only in cases bailable according to the course of the common law. (Section 5.)

In case the convicted person shall be utterly unable to pay the costs of the cause in whole or in part, and shall (section 6) make oath " before the court or the clerk thereof," and also by credible testimony establish satisfactorily that he has no property or other means of payment, either in his possession or under his control, and has not divested himself of his property for the purpose of receiving benefit from his oath, and is also utterly unable to enter into the recognizance required to secure the payment of such judgment, fine and costs, thereupon, such oath being made and evidence produced, the writ of error shall be a supersedeas without such payment, if the defendant remain in custody, or, in cases not capital, upon his entering into recognizance with one or more sureties conditioned that he shall be personally forthcoming to answer and abide the final order, sentence or judgment that may be passed in the premises by the Supreme Court, and further conditioned for his appearance before the Circuit Court as above indicated.

It is apparent that the act of 1848 has not provided that the transcript of the record, upon an inspection of which the writ may be allowed to issue, shall be furnished by the clerk without pay or shall be primarily charged against the State, nor does it impose the payment of costs upon the State. It is also clear that there is in the record nothing to show that the act of 1887, (chapter 3702,) or the act of 1859, chapter 1001 (assuming it not repealed by chapter 3702), in so far as they, or either of them, provide for the taxation to, or payment by, the State, of costs incurred by insolvent persons in criminal trials, have been complied

with by the relator, even if it be that such statutes apply to proceedings on writs of error. The proceedings provided by the act of 1848 for giving to a writ of error the effect of a supersedeas, are all upon the assumption that the writ has already issued, or at least been allowed, in the manner indicated by the statutes. It is certain that no writ has been allowed, in such manner, in the case before us. The Legislature has provided the manner for its allowance, and it is not our province to alter or defeat such provision.

It is contended that under section 14 of the Declaration of Rights of the Constitution, the clerk cannot require payment of cost of the transcript. This is as follows : " No person shall be compelled to pay costs except after conviction on a final trial."

If it be that the purpose of this section of the Declaration of Rights was to prohibit any officer of a court from requiring a person held under a criminal charge or on trial for the same, to pay, before he shall have been convicted on final trial, costs for any official service, and to make it the duty of such officer to perform official services for a person so held or on trial, without the right to require pay of him for the same until after his conviction on final trial, and that its purpose, in connection with section 9, of article XVI, was to make the State the debtor of the officer for services so performed in case such person should be " insolvent or discharged," it is still clear that the provision of the Declaration of Rights does not extend beyond a " conviction on final trial," and this being so we must determine the meaning of these words.

In civil cases at law we mean by final judgment the adjudication which finally disposes of or determines the case in the court of original jurisdiction having power to examine and determine the case upon its merits, in favor of

the one side or the other, as the result may be, and, if for the plaintiff, declares the nature and extent of his recovery and entitles him to his execution for the enforcement or satisfaction of the same, and if for the defendant, declares that the plaintiff shall take nothing by his suit and that the defendant shall no longer be detained in court, and awards the defendant his costs against the plaintiff. Gates vs. Hayner, 22 Fla., 325. In criminal cases the entry in such a court of the sentence upon the verdict of guilty is the final judgment. 1 Bishop on Criminal Procedure, 1120, 1121 ; Bouvier," Final Sentence ;" Savage vs. State, 19 Fla., 561 ; and in this judgment the costs of prosecution (barring any effect to the contrary, of provisions as to payment by the State in case the person convicted is insolvent, and has complied with the statutes governing in such cases,) should be included and entered up against the convicted person, (section 3, p. 294, McClellan's Digest,) and the writ of execution having the effect of both a *ca. sa.* and *fi fa*, issues in favor of the State against the defendant. (Section 8, pp. 294, 295.)

By " final trial " we understand the framers of the Constitution to have meant that trial in a criminal case in a court of original trial jurisdiction, upon which such a sen· tence or judgment of conviction, as is indicated above, could be entered. Vannevar vs. Bryant, 21 Wallace, 41 ; Insurance Company vs. Dunn, 19 Wallace, 214. If it does not mean this, it means final determination and affirmance of the judgment of conviction by the appellate court. The latter construction would be to say that the framers of the Constitution intended by this section to suspend the State's right to execution and satisfaction for costs recovered, until the judgment of conviction had (at the end of litigation, however protracted,) been affirmed, and it would make a writ of error operate of itself as a supersedeas to the en-

forcement of the judgment for costs without compliance by the persón convicted with the requirements of the act of 1848 regulating the same. We cannot think this alteration of the practice regulating writs of errror and the enforcement of judgments were intended, but believe that the real purpose and the only effect to be given to the section is that the " final trial" is one ascertained by the ordinary final judgment in criminal cases. This is the ordinary meaning of the words used. When such a judgment has been entered, and no motion for a new trial has been made, or one has been made and refused, it is, until set aside or vacated in the manner prescribed by law, a final judgment, Vannevar vs. Bryant, *supra*, and evidences a final trial; and though its execution may be superseded in the manner provided by the statutes, the constitutional provision in question does not apply to costs that may accrue after its entry and before it is set aside by competent authority. Though the execution of the final trial and final judgment consequent thereupon has been suspended by obtaining a writ of error and taking the steps which the statute requires to make such a writ a supersedeas, still it is a fact that there has been a final trial, and is a final judgment evidencing it, and the juncture up to which the inhibition of the Constitution extends, has been reached. Subsequent to this juncture the payment of costs is a matter for statutory regulation untrammelled by the section in question.

Where a new trial is granted in either the court of original trial jurisdiction, or by an appellate court, and the final judgment thus vacated, the case stands as if no final trial had been had and the inhibition of the Constitution comes into play until there is one; and we do not mean to say that the same is not true where the legal effect of an appeal and supersedeas duly taken is to give to the convict

the right to a trial *de novo* in the appellate court. 19 Wallace, 214; 21 Wallace, 41.

It appears from the return, and is not denied, that on applying for the transcript the relator notified the respondent that he would not pay for it, but that the latter must look to the State for his pay. Without saying more, we are, in view of this fact and the other circumstances referred to above, satisfied that the Clerk was justified in refusing to furnish the record.

The peremptory writ is denied and judgment of the court will be that the •respondent go without day, and that he recover his costs. State *ex rel.* vs. County Commissioners of Sumter County, 22 Fla., 364, 370.

It will be so ordered.