GABRIEL WOOD, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. It is not error to refuse to permit a party calling an impeaching witness to lead him by reciting in a question the statement which he proposes to prove was made by the witness sought to be impeached.

2. It is not error for the trial court to refuse to permit a party who has called an impeaching witness to ask him on the direct examination if he had ever heard the reputation of the witness sought to be impeached, discussed. The usual practice is to leave it to the cross-examination to enter *primarily* upon a test of the knowledge from which the impeaching witness has spoken.

3. In charging juries, care should be taken by the judge not to leave them under impression that, in his judgment, they must convict of some degree of offense covered by the indictment, and can not acquit. The jury should be properly instructed as to the presumption of innocence which surrounds a person on trial for crime.

4. Points of law as to which a jury is to be instructed, can not arise in any case except upon the facts or evidence thereof, and hence properly the charge to the jury should give the law applicable to all the facts or evidence, and should not give law which is applicable solely to facts or evidence not in the case. The former law is relevant to the case, whereas the latter is irrelevant to it, and may be misleading.

Gabriel Wood v. The State of Florida.—Syllabus.

5. When a judge instructs a jury that they can not convict of a certain offense, or a degree of offense, covered by the indictment, and there is any evidence before the jury, the instruction is not confined solely to the law of the case, but gives his opinion as to the effect or weight of the evidence; and is a violation of the policy of the statute which prescribes that charges to juries shall be "only upon the law of the case." The duty imposed by this statute is most properly performed by simply instructing upon the law applicable to the case, and omitting and refusing to instruct as to the law not applicable thereto. The fact that some violations of this policy may, in view of the circumstances of the case, not be material or reversible error, does not change the statute, nor justify a disregard of it.

6. If a judge instructs a jury that they can not convict of a lesser offense, or degree thereof, covered by the indictment, than that of which a verdict is subsequently found on the trial, and there is any testimony of which it can with any reason whatever be said that its effect might have been to cause the jury to convict of such lesser offense or degree, the instruction will be material error.

7. The deficiency or error of one part of a charge to a jury may be supplied or corrected by another portion of it.

8. When two distinct propositions of law in a charge are excepted to as a whole, the exception falls if one of the propositions is good.

9. The judge charged the jury: "If you have a reasonable doubt of the guilt of the accused, you will acquit. A reasonable doubt is one that must satisfy a reasonable mind after a full comparison and consideration of all the evidence:" *Held,* That the second sentence was confusing and misleading, and, considered with the first sentence, calculated to create the impression that there must be such a doubt as must satisfy reasonable minds that the accused was not guilty.

Writ of Error to the Circuit Court for Washington county.

The facts in the case are stated in the opinion of the court.

*Benj. L. Liddon*, for Plaintiff in Error.

*The Attorney-General*, for Defendant in Error.

RANEY, C. J.:

The plaintiff in error was tried at the Spring term, 1892, of the Circuit Court in Washington county, upon an indictment charging him with having murdered Samuel Osborne on January 23d, 1889. The jury returned a verdict of guilty of manslaughter in the second degree, and the court sentenced the prisoner to imprisonment in the State prison for the period of seven years, to which sentence or judgment he has taken a writ of error.

I. The first error assigned is the refusal of the trial judge to permit the defendant's counsel to ask Mrs. Reddick, a witness for defendant: "Did Mrs. Kent say to Seth Osborne at her house on the night of the day that Osborne was killed, that if Wood had not killed Osborne, that Osborne would have killed Wood?" Mrs. Kent was a witness for the prosecution, and had on her cross-examination said: "I know Elizabeth Reddick. She is my daughter. I talked to all of C. F. Osborne's family. * * * I said to Mrs. Reddick that Osborne said: 'Gabe, would you shoot me?' and that Osborne died with his knife in his hand. I did not say to Mrs. Reddick or to Seth Os-

borne that if Gabe had not killed Sam., that Sam. would have killed Gabe. I did not say that Sam. died brave." The objection made by the State Attorney, and sustained by the court, to the question under discussion was that it was leading. Without conceding that the proper basis was laid in the examination of Mrs. Kent for her impeachment in the manner proposed (1 Greenleaf on Evidence, secs. 461, 462; Ortiz vs. State, 30 Fla., 256, 11 South. Rep., 611), we are satisfied that there was not error in sustaining the specific objection interposed by the State Attorney. In note 1 to section 462, 1 Greenleaf's Evidence (13th ed.), it is said, citing Hallett vs. Counsent, 2 M. & Rob., 238, that if the witness sought to be impeached denies having made contradictory statements inquired of, and a witness is called to prove that he did, the particular words must not be put, but the witness must be required to relate what passed. See note 3, same section of fifteenth edition. We fail to see why the rule excluding leading questions is not applicable to this kind of evidence. We, however, do not mean to intimate that it would be assignable as error if the trial judge had permitted leading questions. Southern Express Company vs. VanMeter, 17 Fla., 783, 797.

II. The second error assigned is the refusal to permit the defendant to ask George Crooms, one of his witnesses, if he had ever heard the reputation of William Page for truth and veracity discussed. Page was one of the State's witnesses. Crooms had previ-

ously stated on examination by the defendant that he knew Page's reputation in the community where he lives, and that it was bad, and from that reputation witness could not believe him on his oath; and had also said: I live at Bear Creek in this county; and I think when I moved down there Page was living on the head of the bay; then he moved down the bay and then back, then to Apalachicola. Mr. Kent was Page's nearest neighbor. I have heard Mr. McAllister, Mr. Spiree, Mr. Brooks and others speak of him.

We are not satisfied but that the logical deduction from the record, particularly if we consider the examination of previous witnesses on the same point, is that the witness had, in effect, if not expressly, answered this very question in stating that he had heard Mr. McAllister and others speak of him; but however this may be, we see no ground for holding that there was error in the ruling complained of. Evidently the usual questions had been asked the witness, and he answered and stated that he knew the reputation of the assailed witness in the community where he lived for truth and veracity, and that he could not believe him on his oath. The idea of the judge, if it be that the question under discussion had not been answered already, was doubtless to leave it to the cross-examination to enter primarily upon such a test of the knowledge from which the impeaching witness spoke, if he deemed it material to do so. This is the general rule, and we do not think there was error in pur-

15

suing that practice.   Robinson vs. State, 16 Fla., 835,
840; State vs. Howard, 9 N. H., 485; Bates vs. Barber,
4 Cush., 107; Commonwealth vs. Lawler, 11 Allen,
585; Wetherbee vs. Norris, 103 Mass., 565; Childs vs.
State, 55 Ala., 28; Hadley vs. State, 55 Ala., 31; Lower
vs. Winters, 7 Cow., 263; People vs. Mather, 4 Wend.,
230, 257; Frank vs. Bank of Illinois, 11 Ill., 367; Crab-
tree vs. Kile, 21 Ill., 180; Crabtree vs. Haganbaugh. 25
Ill., 233; 1 Greenleaf on Evidence, sec.   461.   We
have of course assumed, in the absence of any objec-
tion to the questions which may have been put to the
impeaching witness, that the inquiry was as to the
*general* reputation of the State's witness, for truth
and veracity in the community where he lived, and
also that the meaning of inquiry únder discussion was
as to discussion by the people of that community.

III. The next point urged is the exception to the
part of the charge to the jury stating that "under an
indictment for murder in the first degree you may find
the accused guilty of murder in either of the three
degrees; or you may find him guilty of manslaughter
in either of the four degrees, according to the facts and
circumstances of the case."   The judge had previously
stated that the indictment was for murder in the first
degree, and that there were three degrees of murder,
and four degrees of manslaughter.   He then defined
murder in the first degree, stated to the jury that
under the facts and circumstances of this case they
could not find the prisoner guilty of murder in the
second or third degrees, or of manslaughter in the

first, third or fourth degrees, explained manslaughter in the second degree, justifiable and excusable homicide, including the law as to threats, self-defense, and overt acts in execution of the same, instructed them as to their powers and duties where there is conflict of testimony, and that they were the sole judges of the evidence, and that the statement of the prisoner was evidence for whatever they might think it worth, and then stated what would make it their duty to find the prisoner guilty of murder in the first degree, and what manslaughter in the second degree, and, then, to acquit the defendant if the killing was in self-defense, then that a majority of their number might recommend to mercy, and the effect of such recommendation, and concluded by telling them if they had a reasonable doubt of the guilt of the accused they would acquit, and defining such doubt as one which will satisfy a reasonable mind after a full comparison and consideration of all the evidence.

The objection to the instruction, or part of the charge excepted to is that it was calculated to mislead the jury, as they were not informed that they could acquit the prisoner, and from the language of such instruction the jury had to infer that a verdict of guilty of some offense was the only one they could render; that it assumes the guilt of the defendant, and is a practical direction to find him guilty of some offense. If the instruction defining a reasonable doubt was not insufficient, as it is shown to be by the last subdivision of this opinion, it may be we would hold that

the *entire charge* was not subject to the objection made to it, but in view of the error in the definition our opinion of the *entire charge* is that it does not properly inform the jury of the presumptions of innocence which surround a prisoner, and is, to some extent at least, subject to the objection made to it. Houston vs. State, 24 Fla., 336. Whether such an objection could be taken advantage of in this court in the absence of a request to charge on the point, it is not necessary to decide.

IV. As to the instruction: "The court charges you that under the facts and circumstances of this case, you can not find the prisoner guilty of murder in the second or third degrees; nor can you find him guilty of manslaughter in the first, third or fourth degrees," it is urged that the charge is not exclusively on the law of the case, but invaded the province of the jury, who were the exclusive judges of the facts, and of "the degree of the guilt of what the evidence showed the defendant to be guilty;" and draws incorrect conclusions from the testimony, as the evidence tends to show manslaughter in the third or fourth degrees, if any offense at all, and that there is less application of the facts to manslaughter in the second degree than to any other degree of manslaughter.

The judge stated to the jury in his charge that there was one degree of manslaughter which he deemed it proper to define; and then said: "If a person unnecessarily kills another, either while resisting an

attempt by such other person to commit any felony, or to do any other unlawful act, or after such attempt shall have failed, he is guilty of manslaughter in the second degree.'' Such homicides, we may remark here, are declared by the crimes act of 1868 to be manslaughter in the degree stated. Section 10, p. 351, McClellan's Digest. It is also necessary to the discussion of the point under consideration, for us to state that among the homicides designated as manslaughter in the *third* degree, the only class that needs to be noticed is that defined by section 11, p. 352, McClellan's Digest, which is : ''The killing of another in the heat of passion, without a design to effect death, by a dangerous weapon, in any case except such wherein the killing of another herein is declared to be justifiable or excusable, shall be deemed manslaughter in the *third* degree ;'' and that the seventeenth section on the page declares : '' the involuntary killing of another by any weapon, or by any means neither cruel nor unusual, in the heat of passion in any cases other than such as are herein declared to be excusable, shall be deemed manslaughter in the *fourth* degree.''

When a judge refuses to charge as to the law of a certain offense covered by the indictment, and as to which there is relevant testimony, or as to the law of any certain degree or degrees of that offense, it is error ; and so it is where he charges the law of an offense, or degree of an offense as to which the indict-

ment or testimony is in no wise relevant. Dukes vs. State, 14 Fla., 499 ; Brown vs. State, 18 Fla., 472 ; J., T. & K. W. Ry. Co. vs. Neff, 28 Fla., 373, 9 South Rep., 653 ; Sammis, Admr., vs. Wightman, 31 Fla., 10, 12 South. Rep., 526 ; Boyd vs. State, 17 Ga., 194 ; but in neither of the two classes of cases is there any violation of the statutory rule which forbids a judge to charge on the *facts or evidence*. Of course, points of law can not arise in any case except upon the facts or evidence of that case, and hence properly the charge should give the law applicable to all the facts or evidence ; but on the other hand, it should not give law which is applicable solely to facts not testified to in the case, because such law is irrevelant to the case, or in other words, is not the law of the case, and may mislead and confuse the jury. Gladden vs. State, 12 Fla., 576 ; McClellan's Digest, section 34, page 378, and authorities *supra*.

However, when a judge instructs a jury that they can not convict of a certain offense, or degree of offense, covered by the indictment, and there is any evidence before the jury, the charge can not be said to be " only upon the law of the case ;" and for the reason that he gives his opinion upon the effect or weight of the evidence actually before the jury. Though it may be true that wherever the expression relates to and has excluded the conviction of a higher degree of the offense charged than that for which a verdict is returned by the jury, there can be no injury to the accused, and hence not reversible error, still it can not be denied that the judicial expression relates to

Gabriel Wood v. The State of Florida.—Opinion of Court.

the effect of the evidence, and it is a violation of the policy of the statute in that such statute evidently intends that the duty prescribed for the judge of confining his instructions to the law of the case should be performed by merely instructing the law applicable to the case, and omitting and refusing to instruct as to the law not applicable to it. This is the proper and safe course. Ross vs. State, 29 Texas, 499. Where the exclusion made by express direction of the judge is of a lesser offense covered by the indictment, or lower degree of the offense than that of which a conviction may follow, it is clearly a violation of that policy of our law which condemns any expression by the judge as to the credibility of witnesses or the weight of relevant evidence, and which reserves to the jury the decision of all such questions entirely liberated from the influence of the impressions of the judge as to them. Garner vs. State, 28 Fla., 113, 9 South. Rep., 835. Where the judge is of the opinion that there is no testimony to invoke the jury's consideration of guilt of a certain lower degree of the offense covered by the indictment, his simple duty is to refuse to charge as to the law of such degree or degrees. He should, however, never refuse to charge as to the law of such lesser degrees unless it is certain that there is no testimony relevant to it. If it be that there is any testimony of which it can be said, with any reason whatever, that its effect might have been to cause the jury to return a verdict of guilty of such lower degree, it will be material error in the judge to exclude or divert the jury from the consideration of that degree.

But even where he may safely refuse to charge as to the law of such lower degree, it is not contemplated by our system that he should tell the jury that they can not convict of such lower degree, and for the reason that he thereby tells the jury directly his opinion of the effect of the evidence instead of confining his expressions to the mere law of the case. When the judge told the jury in this case that they could not convict of the stated degrees of murder and manslaughter, he in effect said to them that the testimony before them was not of a character to justify a verdict for either of these offenses, and it was a statement of his opinion as to the evidence which had been adduced. Though it be, as intimated above, that the exclusion of the degrees of murder and manslaughter in the first degree is, in view of the verdict of manslaughter in the second degree, not injurious to defendant (Johnson vs. State, 27 Fla., 245. 9 South Rep., 208), how is it as to the exclusion of manslaughter in the third and fourth degree, defined above, from the jury's consideration? Considered with other portions of the charge which had been given to them, the effect was to tell the jury that though the evidence did not justify a conviction of these grades of offense, it did authorize it as to other and higher grades. In Metzger vs. State, 18 Fla., 481, the trial judge instructed the jury that there was no conflicting evidence, and this court held that it was an assumption of the province of the jury, and precisely what the statute of 1887 (McClellan's Digest, p. 378, sec. 34, Rev. Stat., sec. 1088) forbids; yet that under this act,

differing in this respect from its predecessor of 1848, such an error would not impair the judgment unless it was material error affecting injuriously the rights of the complaining party; and further, that it was, in that instance, immaterial error, as there was in fact no contradiction or conflict in the testimony.  In the case of Garner vs. State, *supra*, it was decided that remarks made by a judge, in the course of a trial, as to the credibility of witnesses, or the weight of relevant evidence, however inadvertently such remarks may be made, are the subjects of exception and of assignment as error by the party to whom they may seem to be prejudicial, and are grounds for reversing a judgment; and that it is the province of the court to pass upon the admissibility of evidence, but its credibility and weight are questions for the jury.  And in Pinson vs. State, 28 Fla., 735, 9 South Rep., 706, the decision was that the judge can not substitute his inference from the facts of the case for what might be that of the jury. Let us assume that there is in the bill of exceptions some, even the least, evidence from which the jury might at all reasonably have concluded that manslaughter in the third or fourth degrees was the offense of which the plaintiff in error should be convicted, and it becomes apparent that the jurors have been subjected to the influence of the judicial mind upon the very point which it was the purpose of our law-makers to exempt them from, and to protect all persons charged with crime against.  Rice vs. State, 3 Texas App., 451.  And wherever there is any such invasion of the exclusive domain of the jury there must be

a reversal, unless it is clear that there was no testimony before the jury from which they could with any reason have formed a verdict of guilty of the excluded lesser offense or degree of crime. Dukes vs. State, 14 Fla., 499; Brown vs. State, 18 Fla., 472; Willingham vs. State, 21 Fla., 761, 781. It is true that a different view from this seems to have been taken in People vs. King, 27 Cal., 507, and in Choice vs. State, 31 Ga., 424. In California the established practice is to permit the judge to state the testimony, though he can not express his opinion on the weight of the evidence; still, in the case cited from that State, where the jury were told there was no evidence which would reduce the offense charged to manslaughter, and that they could not consider that degree of homicide, it was held that where there is any evidence before the jury tending to reduce the offense to the grade of manslaughter such an instruction is erroneous, but if there is a total absence of all testimony as to such facts and circumstances as would reduce the offense from murder to manslaughter it is not erroneous; and there being no evidence of the character in question the instruction was held not to be erroneous. In Georgia the statute prohibited the judge from expressing or intimating, during the progress of the trial or in his charge to the jury, his opinion as to what has or has not been proved, or as to the guilt of the accused (2 Thompson on Trials, secs. 2280, 2285). The judge's charge to the jury was: "There are sev-

eral grades of homicide recognized by the law, involving different degrees of punishment, such as murder, voluntary and involuntary manslaughter. and justifiable homicide. The defendant in this case is indicted for murder, and in the opinion of the court there can be no intermediate verdict between that of guilty of murder and that of not guilty, and it is therefore unnecessary to charge you as to the minor grades of homicide." The Supreme Court of that State in passing on the charge said: If Choice was sufficiently rational to be criminally responsible for his acts, the killing of Webb was, in the eye of the law, murder without provocation, and without one mitigating circumstance; if insane, he was entitled to a verdict of acquittal; and there can be no intermediate ground; and for the court to have charged the jury as to manslaughter would have been foreign to the case made by the pleadings and the proof; that no such defense was set up, nor any such request made. * * * "Had," says the opinion, "there been any evidence upon which the jury might have mitigated the offense from murder to a lower grade of homicide, it would have been different. There was not a scintilla of proof to that effect. Without the shadow of excuse Choice with deliberate aim shoots down an unoffending citizen in the peace of the state. If the law is administered, his life must atone for it if he is subject to punishment; if he is not, it is fit and proper that he go free altogether, as would the infant and idiot."

The fact that the judge can state the testimony in California and can not properly do so here, at least distinguishes, if it does not relieve the California decision from any conflict with our conclusions; and viewing the Georgia case in the light of our practice, we think the proper view to take of the charge of the Circuit Judge is that it was error, but considering the facts of the case not material or reversible error.

As the case has to go back for a new trial, it is perhaps improper that we should express any view as to the materiality or immateriality of the exclusion of the stated lower degrees of manslaughter.

V. The court also instructed the jury as follows: A killing may also be done under justifiable' or excusable circumstances. *Homicide is justifiable when committed in resisting an attempt to murder the slayer, or when committed in the lawful defense of his person, or when there shall be a reasonable ground for the slayer to apprehend a design to do some great bodily injury and there shall be imminent danger of such design being accomplished. To justify a killing in self-defense on the ground that the slayer had reason to apprehend a design on the part of the deceased to do some great personal injury, there must be some overt act, some demonstration, or some show of attempt or offer on the part of the deceased to do that personal injury.* Threats alone do not justify the taking of human life, nor does the quarrelsome or dangerous character of the deceased justify an attack upon him, or an injury of any kind

to his person.  Evidence of threats and of the char-
acter of the deceased are permissible for the reason,
that if there was a demonstration on the part of the de-
ceased towards the accused at the time of the killing, or·
at the time of the first shooting by the prisoner, they·
will serve to explain this demonstration or overt act,
and to show the reasonableness of the accused in be-
lieving himself to be in that danger which justified
him in taking the life of Osborne.  The party threat-
ened in such cases is to judge from the circumstances
by which he is surrounded, and as they appear to him
at the time ; but when a man acts upon appearances
and takes the life of his fellow-man he does it at his
peril, and he can not justify such killing unless there
are circumstances which would induce a reasonably
cautious man to believe that it was necessary to save
his own life or to save himself from great personal
injury.  *And this apprehended danger must be im-
mediate and imminent, and not remote, and it must
appear to the accused that it must be resisted then and
there to save his life, or himself from great personal
injury.  He will not be justified if there appeared to
him at the time any other way of saving himself
from the apprehended danger except to take the life
of the deceased* * *  .  If you believe from the evi-
dence that the prisoner killed the deceased in self-
defense, or under a reasonable belief, such as a cau-
tious and prudent man would entertain, that it was
necessary for him to strike the fatal blow in order to,

save himself from death or great bodily harm, you will acquit him ; but if you believe that he made the first assault or demonstration of violence you must be satisfied that he acted under that belief of imminent danger at the time of the first violent assault.

The four sentences above, which we have italicised, were excepted to by defendant. The ground of objection to the first and second of them is that they exclude the defense of a mere *apparent* imminent danger or overt act or demonstration, such as would cause a prudent man to apprehend imminent danger, and confine it to real or actual danger. We do not deny that the first of these sentences standing alone, or it and the second considered together, are subject to the objection urged, but when all the instructions as given above are considered as a whole, our opinion is that mere apparent danger, when the circumstances surrounding the party are such as to lead the accused, as a reasonable and prudent man, to believe himself in actual danger of loss of his life or of serious bodily harm, is comprehended and recognized as constituting self-defense. Still we must admit that it is not brought out as clearly as it would have been had the following sentence of the opinion in the Smith case (25 Fla., 524, 6 South. Rep., 484) been used : To justify the killing there must be an overt act on the part of the deceased, showing an intention to carry his threats into execution before the party threatened is justified in killing his adversary, but after the overt act is proved, and it

is such as to induce a reasonably prudent man to believe that his adversary intended to execute his threats and he kills his adversary, he is justified, notwithstanding it may turn out that he was actually in no danger at the time.   See also 1 Bishop Crim. Law, Section 305 and note.

It may not be improper to remark that this stated doctrine of self-defense when the danger is simply apparent is not confined to cases of which previous threats by the deceased are a feature.

The third and fourth of the stated sentences were excepted to as a whole.   The third, in view of the other parts of the charge, is an entirely correct proposition of law, being as true of a case of actual as it is of merely apparent danger, and this being so, the exception taken is of no avail as to the other or fourth, sentence, assuming that the latter is erroneous. Metzger vs. State, 18 Fla., 540; Baker vs. Chatfield, 23 Fla., 540, 2 South. Rep., 322; Pinson vs. State, 28 Fla., 735, 9 South. Rep., 706.   The objection to the first sentence is that it carries the doctrine of retreating to the wall too far.   If the purpose of the trial judge was to charge on that subject it is only necessary to say that it will be found in 1 Bishop's Criminal Law, Chapter 56.

VI. The judge also instructed the jury as follows: "If you have a reasonable doubt of the guilt of the accused you will acquit.   A reasonable doubt is one

that must satisfy a reasonable mind after a full com-parison and consideration of all the evidence." No other charge was given on this subject. Our con-clusion is that the second sentence is confusing, and much more likely to mislead a jury than to have any other effect. Considered in connection with the first sentence, the natural and obvious conclusion of the ordinary lay mind therefrom would be that there must be such a doubt as must satisfy reasonable minds that the accused was not guilty, or as must satisfy the jury, after considering and comparing all the evidence, of his innocence. It is never necessary to an ac-quittal that the jury shall have such a doubt as satis-fies the mind that the accused is not guilty, and yet we do not see that any inference is so likely to be drawn from this instruction as that a reasonable doubt of the guilt of the prisoner in this case would be a doubt which must satisfy a reasonable mind after a full comparison and consideration of all the evidence that he was not guilty.

The judgment is reversed and a new trial granted.