# THE SUPREME COURT

OF THE

## STATE OF ILLINOIS,

OF CASES ARGUED AT

### JANUARY TERM, 1861, AT SPRINGFIELD.

---

JOHN CRABTREE, Appellant, *v.* WM. HAGENBAUGH, Appellee.

APPEAL FROM EDGAR.

It is erroneous to refuse the interrogatory to an impeaching witness, "whether he is acquainted with the general reputation of the party sought to be impeached, among his neighbors and associates, for truth and veracity." Upon the answer to such an interrogatory, further questions may depend.

An action will lie upon a partial breach of contract, although the time limited for an entire performance has not elapsed; but if suit is commenced for a partial breach and recovery had, damages for such breach would be limited to those sustained before suit, and would be a bar to any further recovery for such breach.

Contracts should receive a reasonable interpretation, according to the intention of the parties executing them, if the intention can be gathered from their language.

The testimony of a witness should not be disregarded, unless he testifies wilfully, and is uncorroborated; or unless he wilfully contradicts himself in a material part of his testimony, for the purpose of concealing the truth. It is otherwise if he contradicts himself through inadvertence.

THIS was an action of assumpsit, commenced in the Edgar Circuit Court, by John Crabtree against William Hagenbaugh, to recover damages for breach of contract.

The declaration contains nine special counts, and the usual common counts.

The special counts allege that the plaintiff, about the 1st of May, 1856, rented of the defendant a certain pasture containing about six hundred acres, (some of the counts say from about the middle of May, 1856, to the 1st of January, 1857, and other counts say from about the 15th of May, 1856, to the 1st of Feb-

ruary, 1857,) for the use of plaintiff's cattle, and that he paid said defendant the sum of five hundred dollars, in advance, for the rent of said pasture, and by the terms of said contract of renting, the said defendant was to furnish sufficient water for said cattle; and as the pasture was inclosed only on three sides, he was to herd the cattle until the fence was completed, which was to be by the first of June following, and to allow no other cattle than his own to run in said pasture. That the plaintiff turned into said pasture about three hundred head of cattle, and that the defendant wholly failed to furnish sufficient water for the cattle, as he contracted to do, and that by reason of his failure to furnish them with water, they became shrunken and greatly deteriorated in value; that he permitted other stock than his own to run in the pasture, and failed to herd the cattle and complete the fence as he contracted to do, by the 1st of June, and permitted some eighty head of the cattle to wander off, and that they were lost to the plaintiff; by reason of the defendant's failure to comply with his contract, he was compelled to abandon the pasture, and take the remaining cattle out; and lays his damage at three thousand dollars.

To all the counts of the declaration, the defendant pleaded the general issue. The case was tried before a jury, at the October term, 1860.

The plaintiff called as a witness, *William Albin,* who testified that on Sunday morning, some time from the 10th to the 15th of May, 1856, (not certain as to the date,) that he went with the plaintiff Crabtree to the house of the defendant; that Crabtree rented the pasture till the 1st of February, 1857, for the sum of five hundred dollars, which he paid in advance; that one Peter Smith was present at the time; that the defendant was to complete the fence by the 1st of June, to herd the cattle until the fence was completed, to allow no other cattle than his (defendant's) own to run in said pasture, and to furnish sufficient water for the cattle. That Crabtree turned in about two hundred and eighty head of cattle. That all the conversation about fencing, herding, furnishing water and keeping out other stock, took place before the payment of the money in the house at Hagenbaugh's; defendant said he would throw a sewer across a slough in the pasture, and if that gave out, he would dig a well. The water gave out in the slough, and defendant dug a little well, but whether it furnished water or not, the witness did not know. The cattle were taken out some time in June; there was no fence completed then.

On cross-examination, witness stated that he did not recollect stating on a former trial that the conversation about fencing, water, etc., took place in the yard; did state on that trial that

the money was paid first, but on reflection became satisfied he was mistaken; had no recollection of writings being spoken of. Several other witnesses were called.

The defense then introduced in evidence the deposition of one *Franklin Grimes,* who stated that in the month of March, 1856, he was present when plaintiff came to rent the pasture of defendant; that no one else was present; that plaintiff agreed to give defendant $500 for the pasture from that time up to Christmas, the money to be paid in advance, but it was paid at that time; that defendant agreed to take the $500; the fence on the south side was not built at that time, about one mile in length; Crabtree said the pasture would be worth more if the fence was up; defendant told plaintiff that he would build the fence as soon as he planted his corn, and he intended to stick to it till he got it up; there was no set time agreed upon; plaintiff wanted defendant to bind himself to furnish water; but witness told defendant he ought not to do it, and defendant then refused; they then agreed to throw a dam across a pond or slough in the pasture, that would furnish water; I heard nothing said by plaintiff about taking the pasture, but I understood it to be a contract; Crabtree got on his horse and rode away.

*John Arthur* testified: Had no recollection of the conversation spoken of by Josiah Wagoner; said he had known witness, Albin, for about thirty years; Albin was about thirty-three years old now. Was then asked if he was acquainted with his general reputation for truth and veracity among his neighbors, and those with whom he associated. Whereupon the court refused to permit the witness to answer said question, and explained that he must first state that he had heard a majority of all his neighbors and those with whom he associated, speak of his character for truth and veracity. To which ruling of the court, in refusing to permit the witness to answer, and explaining, the plaintiff excepted. To the witnesses Crawford and Silas H. Elliott, plaintiff offered to put the same question, without the explanation of the court, but the court refused to permit the question to be answered unless the explanation was first given; to which ruling of the court the plaintiff then and there excepted.

The court then gave for the defendant, on motion of his counsel, the following instructions:

1. The declaration in this cause alleges that the pasture of the defendant was rented to the plaintiff from the 15th of May, 1856, or from or about the 15th or middle of May, 1856, until the 1st of February, 1857; now in order for the plaintiff to recover upon this declaration, he is bound to prove that the contract was that the plaintiff should have the pasture either from

the 15th of May, 1856, or the middle of that month; he cannot recover on this declaration if the pasture was let to him either from or on the 4th or 11th day of May, 1856.

2. If the jury believe, from the testimony, that the contract for the renting the pasture, in the declaration specified, was made in March, 1856, and in the presence of witness, Grimes, and that the contract was that the pasture was let from that time till the next Christmas, the plaintiff cannot recover in this action under the present declaration.

3. If the jury believe, from all the testimony in the cause, that the contract was in fact made in March, 1856, in the presence of Grimes, the contract then made must govern the parties; and though the parties may have rehearsed the contract afterwards, at the time of paying the contract price, yet the defendant is not bound by that if the contract was not stated as made.

4. If the conversation at the defendant's, at the time the cattle of plaintiff were turned upon the pasture, was not a conversation which led to a contract, but the attempted repetition of the alledged contract formerly made, whatever that conversation may have been, it cannot affect the contract as made; if it was erroneously stated or understood, it makes no difference, the contract as made must stand.

5. If the witness, Albin, or any other witness, has testified wilfully false, his whole testimony should be rejected; and so if any witness has shown himself incompetent or amenable, either from want of mind or recollection of facts, to speak the truth at all times, so that he contradicts himself directly upon oath; and if the jury also believe that the witness has attempted wilfully to cover up and conceal his contradictions, or that he has been under the influence of and been tampered with by the plaintiff, but little if any credit should be given to his testimony.

6. If the jury believe, from the testimony, that by the terms of the contract, the commencement or termination of the time for which the pasture was rented, was different from the time stated in the declaration, the plaintiff cannot recover on this declaration.

7. If Crabtree turned upon the pasture more cattle than could reasonably be pastured, then Hagenbaugh was not bound to water the cattle, even though he had agreed to water them; such contract is only to be construed, if proved, as an agreement to water only such number as the pasture would constantly keep.

8. That the contract, sought to be established by the plaintiff, is one and entire, and could not be so violated on the part of the defendant as to vest a right of action for such breach

against the defendant, until the full term of its contemplated duration had transpired, and until Christmas, or the first of February, after the making of the contract, as the jury may find the extent of the contract to be, had been reached and passed; provided the jury find that the plaintiff ever entered upon the enjoyment of the benefits of the contract, and enjoyed them to eny extent whatever.

9. That the plaintiff cannot hold the defendant liable for any of his stock supposed to have been lost, unless he proved to the satisfaction of the jury that the identical stock, supposed to be lost, were delivered into the possession of the defendant, and that at the expiration of the time during which the defendant had undertaken and promised to keep the same, the plaintiff demanded the return of such stock, such demand having been made on the defendant before the commencement of this suit, and that the defendant refused or neglected and failed to return them, and that he continues so to neglect such return.

10. That the plaintiff, if he have proved the contract as alleged, in his declaration, cannot recover back the five hundred dollars, paid for the rent of the pasture, if he had the use of such pasture for any length of time, although it was profitless for a greater part of the time for which it was rented.

11. That the testimony of a witness or witnesses swearing affirmatively to the existence of a fact or facts, in the estimation of the law, will outweigh any amount of the testimony when the witness or witnesses on the other side swear that such fact or facts do not exist nor have ever transpired, so far as their knowledge extends; and in considering contradictory testimony, the jury are required by the law to accord credit to such affirmative testimony rather than that which is negative.

12. That the testimony of witnesses who are called to prove the existence and terms of a contract by detailing the conversation and statement of the parties in which they were understood, as intending to show what the contract was when made, by recapitulation of its terms and incidents, at an after period, is the weakest and least reliable evidence, from the fact that it is most easily fabricated so as to subserve the purpose for which it is sought to be proven, greatly liable to be misunderstood, and from human fallibility to be inaccurately remembered and repeated by the witnesses, without an opportunity most frequently to correct such inaccuracy.

13. If the testimony in this case be, in the opinion of the jury, equally balanced so far as it tends to establish what the contract between the parties was, or should it in their opinion preponderate in favor of the defendant, they should in either case find for the defendant.

14.   That an offer to compromise a pending or apprehended difficulty is, in contemplation of law, no evidence of a concession of the claim of the party to whom such proposition is submitted, and is not to be weighed against the party offering such adjustment.

The jury returned a verdict for the defendant.   The plaintiff, by his counsel, moved the court to set aside the verdict and grant him a new trial, and filed, as the basis of said motion, the following reasons :

1.   That the court erred in refusing to permit John Arthur, Herod Crawford, and Silas H. Elliott to answer the interrogatories, propounded to them by plaintiff's counsel, touching the general reputation of the witness Albin.

2.   The court erred in refusing to give the instructions asked for by plaintiff's counsel.

3.   The court erred in giving the instructions asked for, and given for the defendant.

4.   That the finding of the jury was contrary to the law and evidence of the case.

5.   That the court erred in permitting defendant to give in evidence his own statement about his efforts to get fencing lumber.

The court overruled the plaintiff's motion for a new trial, and entered judgment in favor of defendant; to which rulings and judgment of the court the plaintiff, by his counsel, excepted, and prayed an appeal, which was granted.

The errors assigned are the same as the reasons filed for a new trial, with the additional one, that the court erred in overruling the plaintiff's motion for a new trial, and giving judgment in favor of the defendant.

A. GREEN, for Appellant.

C. H. CONSTABLE, and JOHN P. USHER, for Appellee.

WALKER, J.   On the trial below, witnesses were asked, "if they were acquainted with the general reputation of Albin for truth and veracity among his neighbors, and those with whom he associated."   The impeaching witnesses had stated that they were acquainted with witness Albin, before this question was propounded.   The court refused to permit the witnesses to answer the question, unless they first stated that they had heard a majority of all his neighbors speak of his character for truth and veracity.   The question, as asked, conforms to the rule laid down by writers on evidence, and is free from all objection.   It is also the rule adopted by this court.   *Fry* v. *The Bank of*

*Illinois*, 11 Ill. 367.; *Crabtree* v. *Kyle*, 21 Ill. 180. The court below erred in not permitting the witnesses to answer the question. Had they answered in the affirmative, then the question might have been asked, whether that reputation was good or bad, and when answered, whether, judging from that reputation, they could believe the witness they were called to impeach, under oath. It would then be for the opposite party, by cross-examination, to ascertain the extent of the information of the impeaching witnesses, and their means of knowledge.

The next question is, whether the plaintiff had the right to institute his suit, when a breach of contract had occurred, or whether he was bound to wait until the expiration of the time limited for its entire performance. The doctrine is well settled that when a breach of contract has occurred, an action accrues. After a breach, the other party may abandon the contract, and sustain an action for compensation in damages, or he may, if he choose, waive the breach, and insist upon the fulfillment of its other parts. When the party has a specified time within which to perform an act, the other party of course has no right to recover until after the time has expired. After the time has elapsed and the act has not been done, he may sue and recover for a non-performance, notwithstanding other things by the terms of the agreement remain to be performed, unless they in their nature are incapable of separation.

In this case defendant in error, it appears, leased a pasture to plaintiff in error, and agreed to fence it by the first of the following June. If he failed within that time, to fence the pasture according to his agreement, he undoubtedly became liable for all damages resulting to the plaintiff, by such breach of the contract. The agreement to perform this part of the contract, was an act which seems to have been independent of other portions of the agreement. The fencing of the pasture was a complete act of itself. It was not an inseparable part of another act. And no necessity is perceived why he should be required to wait, until the time for the performance of the last act specified in the agreement, had elapsed. If, however, he should recover for the breach of this portion of the agreement before the end of the time, his recovery would be limited to the damages sustained at the time of instituting his suit, and it would constitute a bar to any further recovery for a breach of this part of the agreement.

The same may be said of the agreement to furnish sufficient water for the cattle, that should be put into the inclosure. It is however insisted that this part of the contract is too indefinite, to authorize a recovery. This, like all other agreements, must receive a reasonable interpretation, according to the intention of the parties, at the time of executing it, if that intention can

be ascertained from the language they have employed for that purpose. It does not appear that any definite number of cattle were agreed upon or spoken of by the parties, at the time the agreement was made, for which defendant was to supply water, or that were to be placed upon the pasture. But as the inclosure was leased for the purpose of pasturing cattle, the presumption is that each party understood that a greater number would not be placed upon it, than it would reasonably support, and that the defendant was only to supply water sufficient for that number. The presumption is, that neither party expected the pasture to be surcharged, or that defendant would have the right to refuse to furnish water for a smaller number than the pasture would reasonably sustain. And if plaintiff placed upon it a larger number, it would give him no right to require defendant to supply a greater quantity of water, nor would it release him from furnishing the necessary supply for a reasonable and proper number, for the support of which the pasture was adequate. If defendant failed to perform this part of his agreement, he must be held liable for all, proximate damages, resulting from its breach.

The sixth instruction announced as a rule, that if the witness testified wilfully false, as to any fact, that the jury should altogether reject his evidence. This instruction as given, is too broad. If he had so testified, to a material fact, and there were no circumstance in the case tending to corroborate his evidence, then the jury would have the right to reject all of his evidence as unworthy of credit, but they should not reject such portions as might be corroborated by other unobjectionable evidence in the cause. They are the judges of the weight to be given to such evidence, and it is their duty to determine whether it is supported by other testimony, and if so, to adopt and give it such weight as it deserves, otherwise to reject it. The same instruction is too broad in directing the jury that they should reject the evidence of a witness who makes contradictory statements on the stand. When the witness contradicts himself in a material part of his evidence, and should do so wilfully and for the purpose of concealing the truth, he would be unworthy of belief, except so far only as he might be supported by other evidence in the case. But if a contradiction should occur through inadvertence, or in reference to some matter immaterial to the issue, such a contradiction should not of itself render his evidence unworthy of credit.

The judgment of the court below is reversed, and the cause is remanded.

*Judgment reversed.*