Underwood v. Wolf.

Phineas L. Underwood et al.

v.

Frederick W. Wolf.

*Sales—Refrigerating Apparatus — Guaranty — Acceptance — Delay— Damages—Evidence.*

1. In an action to recover the contract price for refrigerating machines and apparatus furnished and set up, the fact being that defendants kept and used the same after the date upon which, by the terms of the contract, they were to be accepted if the guaranties were then fulfilled, and the contention being as to whether, if so accepted, they were entitled to deduct from the contract price damages for the failure of the machines to meet such guaranties, this court holds that their intention as to acceptance was a question of fact for the jury, to be determined from their acts and words; that it was their duty, when the time came for acceptance, either to accept or reject; and that in the latter case they were bound to do nothing with such machines which was inconsistent with plaintiff's ownership or right to remove them.

2.  A vendee can not receive property under a contract, retain it after an opportunity for testing it and ascertaining its quality, and recover damages if it differs in performance or description from what is called for by the contract, without offering to return the same.

3.  In the case presented, this court holds that the refusal to allow plaintiff to remove the machines in question unless he left the packing house in the same condition in which it was when they were set up, the use of the machines for months after a fair test had been made and the time for election had passed, and the insurance of the machines in their own name, were acts of acceptance, which mere words refusing to accept in terms would have but little tendency to qualify, and that the conclusion of the jury that there was an acceptance was fully sustained.

4.  An erroneous instruction can not be complained of by the party at whose request it was given.

[Opinion filed April 3, 1889.]

Appeal from the Superior Court of Cook County; the Hon. Elliott Anthony, Judge, presiding.

This action was brought to recover the contract price for refrigerating machines and apparatus furnished and set up by appellee for appellants in their packing house under the following contract:

"This agreement made and entered into at Chicago, this eighth day of February, 1886, by and between Fred W. Wolf, of the city of Chicago, county of Cook, State of Illinois, party of the first part, and Phineas L. Underwood, James Viles, Jr., and Thomas M. Jordan, being and composing the firm of Underwood & Co., of the city of Chicago, county of Cook, State of Illinois, party of the second part:

*Witnesseth*—That said party of the first part has agreed to furnish and erect on the packing house premises of the party of the second part, of the best material and workmanship, and in complete working order and condition, two forty-ton each, Linde refrigerating machines, on coupled frame, with two iron condensing tanks and coils, and two iron refrigerating or brine tanks, of two hundred fifty barrels each, and coils, and necessary connections.

One automatic cut-off Corliss engine of 20 x 42 cylinder size,

Underwood v. Wolf.

which shall be capable to run the packing house machinery in addition to the compressors.

All the iron piping necessary to carry and convey the brine required for the proper cooling of the rooms hereinafter mentioned to be cooled, together with feed and discharge pipes, hangers, manifolds, cocks, bends, etc., and one steam pump, of approved make, and of sufficient size to circulate all the brine to do the cooling mentioned to be done.

That said party of the first part furthermore agrees and guarantees that the machine shall be of sufficient size to produce and maintain a temperature of 38 Fahrenheit in the following rooms, with the usual work of taking care of meats in cellars, going on:  Two storage rooms, each 64 x 118; one storage room for market, 22 x 42; two storage rooms, 22 x 42; one lard room, 29 x 27; one storage room under office, 29 x 96; one room on wholesale floor, 25'–2'' x 9'–9''; and a temperature of 30 Fahrenheit in one room, 27 x 57; and the machines shall also cool daily to 32 Fahrenheit eight hundred hogs of average weight of two hundred pounds each, in two chilling rooms, each 32 x 103, in the following manner:

To cool each room to 34 Fahrenheit in fourteen hours from time hanging in freshly killed hogs, and in ten hours more to cool the hogs in said room to 32 Fahrenheit temperature, inside of ham and next to bone, and to hold hogs at this temperature for twenty-four hours longer.

It is understood that each hog or chilling room (32 x 103) is hung with hogs every alternate day, making a total of 1,600 hogs in both rooms hanging at one time.

And the party of the first part furthermore agrees and guarantees that the power required to drive the machines while doing the above work shall not exceed twenty effective horse-power for each compressor.

And the consumption of fuel necessary to produce steam to do the work of the engines shall not exceed three and one-half (3½) pounds of coal per horse-power per hour, with seventy to eighty pounds boiler pressure and eight pounds of water evaporated per pound of coal burnt.

It is understood that water used on condensing coils shall be from the Chicago river.

And the loss of ammonia while doing the above work shall not exceed two hundred pounds per season's work for each compressor.

The whole plant to be in complete working order and condition within ninety days from signing this agreement.

And party of the first part to furnish all material and labor except as hereinafter provided.

And said party of the second part agrees to furnish a suitable room in which to erect said machinery; also all necessary foundations, masonry and carpenter work, according to the plans furnished by said party of the first part, free of charge.

Said party of second part furthermore agrees to furnish all steam and all feed and discharge water connections, and to properly insulate all the rooms according to plans furnished by party of first part.

Specifications hereby attached to this instrument.

In consideration of the foregoing agreement said party of the second part furthermore agree to well and truly pay, or cause to be paid to said party of first part, the full sum of eighteen thousand dollars ($18,000) lawful money of the United States, in the following manner:

Five thousand dollars ($5,000) one week from time machines are in complete running order and condition.

Two thousand dollars ($2,000) on July 1, 1886.

Two thousand dollars ($2,000) on November 1, 1886.

Two thousand dollars ($2,000) on March 1, 1887.

Two thousand dollars ($2,000) on July 1, 1887.

Two thousand dollars ($2,000) September 1, 1887, and the balance of three thousand ($3,000) January 1, 1888.

And it is further agreed between the parties to this contract, that if the machines have fulfilled the guarantees made for them in this agreement, by 1st of September, 1886, then said party of second part shall accept the same; and all payments to be made after the payment to be made on July 1, 1886, shall be promissory notes, dated on the day of acceptance of the plant, with interest after maturity.

And said party of first part further agrees and guarantees to make all necessary repairs on said machinery for the term

of three years, except such repairs as may be caused by the negligence or mismanagement of the employes of the party of the second part.

In witness whereof, the parties of this agreement have hereunto set their hands and seals this day and year first above written.

> FRED W. WOLF,    [SEAL.]
> per Metzger.
> UNDERWOOD & Co."

The declaration averred the performance of the said contract, avers that the machines fulfilled the guarantees made for them in said agreement, by September 1, 1886, and that defendants accepted the same on said day, and that they were not paid the sum of money agreed, nor have they made and delivered to plaintiff their notes dated on the day of acceptance of said plant, but have wholly failed, etc.

Defendants filed the general issue and special pleas denying that the machines fulfilled the guarantees made in respect to them by the 1st of September, 1886, and denied that the defendants accepted said machine or articles as complying with or fulfilling the conditions or guarantees of the agreement, and also setting up a claim for damages for delay in completion of the machine by plaintiff, and the consequent loss of the use of their packing house to the defendants.

Messrs. C. H. & C. B. WOOD and THOMAS DENT, for appellants.

Messrs. HAMLINE & SCOTT, for appellee.

Under the contract in evidence the title to machinery did not vest in the appellants until the expiration of the time limited by the contract for test and acceptance. Having elected to retain the machines as their own after the expiration of that period, and in the absence of fraud or latent defects, they can not recover compensation for defects which existed in the machines. Eureka Cast Steel Company v. Morden Frog and Crossing Works, 33 Ill. App. 591; The Prairie Farmer Co. v. Taylor, 69 Ill. 440; Manton v. Gammon, 7 Ill. App. 207;

Gaylord Manufacturing Co. v. Allen, 53 N. Y. 515; Brown v. Foster, 15 N. E. Rep. 608 (N. Y. Ct. of App.); Delamater v. Chappell, 48 Md. 246; Norton v. Hummel, 22 Ill. App. 194; Nye et al. v. Iowa City Alcohol Works, 51 Ia. 129; Benjamin on Sales, 4 Am. Ed., Sec. 911; Fairfield v. Madison Mfg. Co., 31 Wis. 346; McParlin v. Boynton, 8 Hun, 449; Neaffle v. Hart, 4 N. Y. (S. C.) 4; Sanders on Warranties, 26; Quinn v. Stout, 31 Mo. 166; Nicholas v. Wayman (Ia.), 32 N. W. Rep. 258; King et al. v. Towsley (Ia.), 19 N. W. 359; Delafield v. DeGraw, 3 Keyes, 467; Gurney v. A. & G. W. Ry. Co., 58 N. Y. 358, 364.

The fact that the property might have been difficult of removal, does not excuse return or offer to return. Neaffle v. Hart, 4 N. Y. (S. C.) 4.

Provisions in the contract for partial payments in advance of date fixed for acceptance, did not operate to make the contract an executed contract, and to vest any present title in the defendants. Wollensack v. Briggs, (Ill.) 10 N. E. Rep. 23; Connell v. Clark, N. Y. Ct. Appeals, 10 N. E. Rep. 888.

The evidence as to every cause of set-off claimed by defendants being sharply conflicting, unless it appears that there was serious error in the instructions or rulings of the court, or misconduct or prejudice on the part of the jury, this court will not interfere with the verdict. Conrad Seipp Brewing Company v. Doody, 25 Ill. App. Ct. 305; Dewitt Co. Nat; Bank v. Nixon, Id. 158; McDermott v. Gubbing, Id. 541 Mitchell v. Hughes, 24 Id. 308.

Delay having been caused by appellants, appellee can not be charged with damages arising therefrom. Taylor v. Renn et al., 79 Ill. 181; Kipp v. Massin, 15 Ill. App. 300; Vermont M. E. Church v. Brose, 104 Ill. 206; Austin v. Steamboat Co., 43 N. Y. 75; Matthews v. Coe, 49 N. Y. 57.

Measure of damages for failure to complete in time, is not probable profits. Frazer v. Smith, 60 Ill. 145; Benton v. Fay, 64 Ill. 417; C., B. & Q. R. R. v. Hale, 83 Ill. 360; Ill. Cent. R. R. Co. v. Cobb, Christy & Co., 64 Ill. 128; M. W. P. Co. v. Waters, 10 Ill. App. 159.

The contract having been under seal, appellants can no

be aided in their endeavor to recoup by the alleged variation of its terms by parol, by agreement with appellee's book-keeper. Equitable Life Ass. Soc. v. Smith, 25 Ill. App. 471.

There having been one seal annexed to the contract, it will be presumed that both signers adopted it. Davis v. Burton, 3 Scam. 41; McLean v. Wilson, Id. 50; Eames v. Preston, 20 Ill. 389.

The court properly overruled the motion to suppress the depositions of Pilsbury and Green, both because of the rule of court, referred to in the bill of exceptions, and because the returns as appearing in the record itself show them to have been taken by proper persons under the commissions. Ill. Cent. R. R. Co. v. Haskins, 115 Ill. 300; Brown v. Luehrs, 79 Ill. 575.·

In any event the testimony of these two witnesses did not at all affect the issue of delay or that of acceptance. Admission of testimony which could not have seriously affected the merits of the case, is no ground for reversal. Felix v. Scharnweber, 119 Ill. 446.

There is no ground for reversal on account of the instructions of the court. Maltman v. Williamson, 69 Ill. 423; Laird v. Warren, 92 Ill. 204; Manton v. Gammon, 7 Ill. App. 207; East v. Crow, 70 Ill. 91; Messmore v. Larson, 86 Ill. 268; Young v. McConnell, 110 Ill. 83; Logg v. the People, 92 Ill. 598; Chicago, M. & St. P. v. Dowd, 115 Ill. 659; Village of Sheridan v. Hibbard, 119 Ill. 307; P. & P. U. Ry. Co. v. Clayberg, 107 Ill. 644.

MORAN, J. The main and controlling question on this appeal is whether the fact that appellants kept and used the machines furnished by appellee after the date when, by the terms of the contract, they were to accept them if the guarantees were then fulfilled, warranted the jury in finding that the said machines were accepted as fulfilling the contract, and whether, if they were so accepted, appellants were prevented from recouping from the contract price, damages for a failure of the machine to meet the guarantees contained in the contract. Appellee's evidence tended to show that the machines

were completed, and were operated by appellants before the 1st of September, and appellants admitted that they continued to use them for the purpose for which they were intended, up to the date of the trial. The court below instructed, in substance, that if appellants accepted the machines, in full discharge of the contract, then they could not recover or set off against the contract price, damages resulting from the failure of the machine to meet the guarantees, and that continued use of the machines, with the knowledge of the defects or imperfections, might constitute an act of acceptance, to be determined by the jury, from all the evidence.

. This is not like a case where work is done and materials furnished in the erection or improvement of a building, or where the machinery is so affixed to the building as to become part thereof, and irremovable. Both parties here treat these machines as removable, and while appellants say that they told appellee to remove them, they also said they would not allow him to do so unless he would put their packing-house in the same condition in which it was before the machines were put in.

It is not seriously contended by appellants that they ever rejected the machines, indeed, their contention is, that they were not, in law, required to do so, but they could retain the machines and operate them in their business, and by showing that the machines did not fill the guarantees, might recoup from the contract price their damages. We are of opinion that the guarantees contained in the contract between the parties are not to be construed as continuing warranties of the machines· The machines and apparatus were sold and placed in appellant's house under the stipulated guarantees, it is true, but it is apparent that the parties contemplated that appellants should have an opportunity to test the machines, and the contract fixes a date when, after such opportunity to test, they should accept the machines, if they fulfilled the guarantees, and pay the contract price. While there was some delay in completing the contract, the evidence shows that appellant had abundant opportunity to try the machines, and that, while they refused to pay for the machines when requested to do so, they continued to use them, and after a time canceled the insurance

Underwood v. Wolf.

on them, which had been in the name of appellee, and took policies on them in their own names. When appellants had made a test of the machines, it was their duty to either accept or reject them. When they refused, in words, to accept them, but continued to use them in the prosecution of their business, without permission, though they complained that they did not come up to the guarantee, it can not be said that the machines were rejected, but it was a question of fact for the jury, to be determined from a consideration of appellants' acts, as well as their words, whether the intent was to accept, and it can not be said, as a matter of law, that those acts do not afford substantial proof of acceptance. The contract in this case is exceptional; it requires an acceptance after time given for a test. If, when the time came for acceptance, appellants were not willing to accept the machines, as complying with the contract, then the alternative they had was to reject them, and if they sought to reject them, they were bound to do nothing with the machines which was inconsistent with appellee's ownership and right to remove them. The refusal to allow appellee to remove them unless he left the packing-house in the same condition in which it was before they were set up, the use of the machines for months after a fair test had been made and the time for election had passed, and the insurance of the machines in their own names, were, in our opinion, acts of acceptance, which mere words refusing to accept in terms would have but little tendency to qualify. The conclusion of the jury that there was an acceptance of the machines, then, is fully sustained.

The guarantees of the agreement being guarantees as to the capacity or performance of the machines, were not, as we have before said, continuing warranties, and whether they were fulfilled was to be determined by the test. The rights of the parties and their duties, after a fair test, were governed by the rule that is applied in executory contracts for the sale and delivery of personal property, which is that the right of the vendee to recover damages on the ground that the article furnished does not fulfill the undertakings of the contract, does not survive the acceptance of the property of the vendee after the opportunity to ascertain the defect, unless the vendee

offers to return the property. He can not receive the property under the contract, retain it after an opportunity of testing it and ascertaining its quality, and recover damages if it differs in performance or description from that called for by the contract. Gaylord Mfg. Co. v. Allen, 53 N. Y. 515; Reed v. Randall, 29 N. Y. 358; McCormick v. Sarson, 45 N. Y. 265; Brown v. Foster, 108 N. Y. 387; Eureka Cast Steel Company v. Morden Frog and Crossing Works, 23 Ill. App. 591.

This case is not like Crabtree v. Kile, 21 Ill. 180, or Mears v. Nichols, 41 Ill. 207. In each of th se cases there was a purchase of an article upon an express warranty that it would answer a specific purpose, and not, as here, a sale upon a guarantee, with a right of test till a specified date, and a requirement of acceptance then, if the warranty or guarantee should be fulfilled. In those cases the title passed to the purchaser by the sale, and was accompanied by a warranty, for the breach of which he might sue; here the title to the machines was not intended to pass until a test had been made, and an acceptance, after test, is an express election to take the title to the machines, and have the benefit of the contract, though the performance or capacity was inferior to that promised and expected. Brown v. Foster, *supra.* The right to accept after a test was not a right to take title to the machine after a test, and hold the vendor for a failure to furnish the machines contracted for, as upon a sale with express warranty.

The instructions given by the court for the plaintiff were correct, and the fact that the court, at the request of appellants, gave to the jury instructions containing a contrary rule, will not avail appellants. The jury in this case followed the correct instructions, and appellants can not assign for error the giving of instructions, whether right or wrong in point of law, which they requested the court to give. It is unnecessary for us to consider the alleged error of the court in refusing to suppress certain depositions. They contain no testimony which could have affected the issues on which the case was determined.

We are of opinion there is no material error in the record, and the judgment will therefore be affirmed.

*Judgment affirmed.*