**Charles D. Benedict, Appellee, v. Henry W. Dakin, Appellant.**

**Gen. No. 14,496.**

1. BROKERS AND FACTORS—*when brokerage fees earned.* Brokerage fees are earned if the broker was the procuring cause of the sale and the means of introducing the purchaser to the property and the seller.

2. EVIDENCE—*when impeaching evidence properly excluded.* Impeaching evidence is properly excluded if the foundation therefor has not been properly laid.

3. EVIDENCE—*what part of res gestae.* Conversations held out of the presence of the party against whom they are offered are competent if they form a part of the *res gestae* and tend to prove

the issues of fact before the jury—verbal statements accompanying evidential facts are competent evidence.

4. PRACTICE—*when propositions of law properly refused.* Propositions of law which ignore essential issues in the cause are properly refused.

Assumpsit. · Appeal from the Superior Court of Cook county; the Hon. GEORGE W. PATTON, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1908. Affirmed. Opinion filed May 11, 1909. Rehearing denied May 21, 1909.

**Statement by the Court.** Charles D. Benedict, appellee, brought suit in the Superior Court against Henry W. Dakin and others, and recovered judgment therein against Dakin for the sum of $19,875 for commissions for finding a purchaser for a lumber plant and property. From that judgment Dakin prosecutes this appeal.

The evidence in the record tends to show that prior to and at the time the matters in controversy here had their inception, the plaintiff Benedict was in the lumber business in Peoria, Illinois, and was purchasing lumber of the defendant and his associates who were manufacturers of lumber at Natalbany, Louisiana.

On or about February 17, 1902, at Natalbany, Benedict being there on business, was employed by Dakin to find a purchaser for the property of the Natalbany Lumber Company, and the New Orleans, Natalbany & Natchez Railroad Company, an associated enterprise, under a promise of compensation if successful. The capital stock of both corporations was owned by Dakin and his two associates Caryl B. Young and George H. Richey, except two shares of the railroad company which were owned by a Mr. Smith.

March 12, 1903, at Natalbany, a contract was signed, by which Dakin, Young and Richey sold to the Weyerhaeuser & Denkmann Company the total capital stock of the two corporations above named. And later, on March 24, 1903, at New Orleans, Louisiana, the contract was performed on both sides, and the sale became

an accomplished fact. The purchase price was $397,-500, which was paid in checks and notes, the transfer being made by assignments of the certificates of stock.

ARND & ARND, for appellant.

GEORGE C. OTTO and FRANK P. LEFFINGWELL, for appellee.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

Aside from certain questions of procedure, the question presented by the record is one of fact entirely, for there is no room for controversy that if Benedict was employed by defendant to procure a purchaser of the property, brokerage fees were earned if Benedict was the procuring cause of the sale and the means of introducing the purchaser to the property and the seller.

On the question of the employment the proof is quite satisfactory in favor of the plaintiff. While there is some conflict between the testimony of the plaintiff and that of the defendant as to what was said and done at the interviews between them on February 17, 1902, at Natalbany, we are convinced from the evidence, including the correspondence and the actions of the parties, that Dakin then employed Benedict to secure a purchaser, promising him a commission if he was successful.

The chief question here is: Was Benedict the procuring cause of the sale and purchase? There is no doubt left in the mind from the evidence, that Benedict went immediately from Natalbany to his home in Peoria, Illinois, and from thence to Rock Island, Illinois, and presented the property to F. C. Denkmann with a plat of the property, a list of assets, buildings and machinery, and a letter of authority given him by defendant Dakin, which stated, among other things: "Our company would most probably entertain or consider a proposition based on a $2 stumpage value, with

a fair and liberal value on the plant, railroad and other equipment." Prospective purchasers were to be referred to the defendant. Frederick C. Denkmann was at that time the local manager of the business of the lumber firm of Weyerhaeuser & Denkmann, doing a large lumber business. At this time F. C. Denkmann did not know that the plant and property of the Natalbany Lumber Company was for sale. The defendant Dakin testifies he did not then know Weyerhaeuser & Denkmann. F. C. Denkmann testified that he was not then acquainted with the defendant Dakin, Caryl B. Young or George H. Richey. Benedict at once reported his interview with Denkmann to the defendant Dakin by letter, in which he asked for information on certain points raised in his interview with Denkmann. Without waiting, however, for a reply by mail, Benedict proceeded at once to Natalbany to see defendant Dakin, arriving there before Dakin had received his letter.

While F. C. Denkmann in his testimony makes it appear that he took no particular interest in the proposition submitted to him by the plaintiff Benedict, and even told Benedict he was not interested, it appears that E. H. Easterling, an experienced lumberman, located at Cold Springs, Mississippi, some sixty or seventy miles from Natalbany, had then recently been employed by Weyerhaeuser & Denkmann as their southern agent. He was in Rock Island about the time that Benedict had his interview with F. C. Denkmann, and Denkmann told him that the property of the Natalbany Lumber Company was for sale. What transpired between F. C. Denkmann and Easterling does not clearly appear from the record, but it does clearly appear that Easterling some time between the date of Benedict's interview with Denkmann, February 20, 1902, and February 24 following, called up Dakin over the telephone in regard to the property of his company and Dakin refused to talk about it over the telephone and requested Easterling to write him.

Accordingly Easterling wrote Dakin in regard to the purchase of the plant for Weyerhaeuser & Denkmann. Dakin replied to Easterling that the property was not for sale. This intervention of Easterling and the correspondence between him and Dakin had all taken place before the arrival of Benedict in Natalbany on his second visit. In the meantime also defendant Dakin had written to plaintiff the letters of February 25 and 26, 1902, shown in the record, which were received by Benedict after his return home from this second visit to Dakin.

In his letter of February 25, 1902, Dakin wrote to Benedict acknowledging his letter of the 22nd and said: "Richey is in New Orleans to-day, and until I can review the matter with him cannot inform you on some of the points asked for. As far as getting price on our interests is concerned, I can say that we would only do that after matter had taken more tangible shape, and when the prospective parties interested have seen what we have."

In the letter of the 26th defendant wrote: "We are all agreed that we prefer to put no price on the property at present other than the information which I recently gave you. Any figures that we might name now, would give but little information before the lands and timber had been looked at by the parties who may be interested. * * * Before the time comes to make a price we will have a definite understanding with you concerning your interest in the commission due you for bringing the matter about."

When the plaintiff, Benedict, appeared at Natalbany the second time, defendant told him of the letter which he had received from Easterling asking whether they could open negotiations, and stated that he had replied that the property was not for sale. He had stated the same thing in his postscript to his letter to plaintiff of February 25, 1902. Plaintiff then said to defendant that he hoped Easterling's connections with the Denkmanns would not interfere with the arrange-

ments he had for commissions on the sale if it was consummated, and Dakin said it would not. On this point Easterling testified: "Dakin wanted to know when I commenced to speak to him about purchasing the plant * * * who it was that I wanted to purchase the plant for, and if I expected a commission out of him for the sale; and stated if he did sell, he wanted to sell direct, so as to avoid a commission; and I told Mr. Dakin that the property would be bought direct, and I expected no commission from him whatever. Then Mr. Dakin and myself began to see what kind of a trade could be made for Weyerhaeuser & Denkmann of Rock Island, Illinois."

As to the further conversation at this second interview between the plaintiff and defendant relating to the proposed sale of the lumber company's plant the plaintiff testified that he told Denkmann about the property and that Denkmann was considering the proposition favorably and wished him to find out about the terms of the sale, and whether the entire capital stock would be sold with the understanding that Mr. Richey would retain part of the interest in the mill. Dakin replied that there would not be any trouble about the terms providing they were properly secured for the deferred payments. Dakin also said that if they sold their interest Mr. Richey would sell his interest with them; that all three would sell out together. This testimony of the plaintiff Benedict is corroborated by the letters of Dakin to plaintiff of February 25 and 26, 1902, above referred to.

After returning from his second trip to Natalbany on this business, Benedict went again to Rock Island and informed Denkmann as to the matters which he desired to know.

In April, 1902, Benedict made a third trip to Natalbany and saw Dakin in regard to the proposed sale, and suggested that inasmuch as he was just out of the hospital and sick Dakin had better take up the negotia-

tions directly with Denkmann and Dakin said he would take it up himself with Denkmann.

Dakin and plaintiff had a fourth interview in regard to the proposed sale in October, 1902, in Benedict's office in Chicago. Dakin then said that the Denkmanns were very slow in making up their minds. Benedict suggested that he was probably asking too much money. They had some further talk in regard to the value of the property, Dakin making some showing as to the increased value thereof which he wrote out on a paper. Correspondence continued between plaintiff and defendant down to November, 1902.

In the meantime, as the evidence shows, Weyerhaeuser & Denkmann had organized the company bearing their name for the purpose of taking over their business, and had been investigating the properties of the Natalbany Lumber Company through their agent Easterling, an expert lumberman, and others. Finally in March, 1903, a sale was made as stated in the statement of the case preceding this opinion.

From the evidence above referred to and other facts and circumstances appearing in the record which we do not stop to recite, we are of the opinion that the plaintiff Benedict pointed out to Dakin the purchasers of the property in question, and called the attention of the purchasers to the properties which they finally purchased. It was the plaintiff who brought the parties into communication with each other on the subject of the sale and purchase, and gave the purchasers such information as to the property that they were induced to investigate it. The evidence shows that promptly after the subject was presented to Denkmann at Rock Island, Weyerhaeuser & Denkmann took steps to place themselves in communication with Dakin and make the necessary investigations, and that while the investigations and negotiations between the parties took up considerable time they were never suspended or abandoned. We think Benedict was the procuring cause of the sale and that the finding to that effect by

the trial court is sustained by a preponderance of the evidence.

We do not think that there was any material error in overruling the objections to the disposition of Easterling presented by the defendant before the trial of the cause.

The testimony of the impeaching witnesses Robinson and Noble, in our opinion, was properly excluded. The questions propounded to the witnesses were not properly framed and the foundation for the testimony was not properly laid. Crabtree v. Kile, 21 Ill. 180, 182, 183; Spies v. The People, 122 id. 1, 208; Magee v. The People, 139 id. 138, 142; Gifford v. The People, 148 id. 173, 176, 177.

We do not think there was material error in excluding the testimony of Jennie White as to certain statements claimed to have been made by Easterling in August, 1903, in the office of defendant's attorneys in Chicago. Her testimony was not material. It did not show that Easterling's statements then made were necessarily contradictory of the testimony given in his deposition read in evidence.

Complaint is made that the trial court erred in its rulings upon the further cross-examination of Easterling, had under an order of court permitting it, and a dedimus issued for that purpose. We think the trial court admitted in evidence all that was material on that cross-examination, and all that was material of Dakin's testimony with reference to the matters inquired about in the cross-examination of Easterling.

It is contended also that testimony of conversations between Benedict and F. C. Denkmann, and between Denkmann and Easterling in the absence of defendant Dakin was not competent evidence. With this contention we cannot agree. These conversations all took place during the negotiations for the sale and purchase of the property and in connection with what was done by the witnesses in relation to the sale which was finally consummated. The conversations were a part

of the *res gestae*, and tended to prove the issues before the court. The conversations reported by Easterling were not offered or received for the purpose of establishing the truth or falsity of the conversations. The question was not whether, when F. C. Denkmann told Easterling that the property was for sale and that Easterling should see Dakin and ascertain what was the best trade that could be made, Denkmann spoke the truth, but, whether he spoke at all, and if so what he said. The truth or falsity of what Denkmann then said was not an issue in the case. The question was not whether what he said was true, but only whether he said it. As to that any one who heard him speak was competent to testify to the fact. Verbal statements accompanying an evidential act are competent evidence. Wigmore on Evidence, Vol. 3, sections 1768, 1772 to 1776; Clayton v. Tucker, 20 Ga. 452, 463. Everything that passed between Easterling and the Denkmanns in relation to the investigation of the property in question, arranging to purchase or purchasing it, was a part of the transaction, and for that reason admissible.

We do not perceive any error in the admeasurement of the damages by the Louisiana standard. The contract of employment was made in Louisiana, the property was in that state, and the sale was made there, and the services of plaintiff were in part performed there. We think there is competent evidence in the record on the admeasurement of damages and that it sustains the finding and judgment.

We have considered the various legal propositions submitted to the court to be held as the law applicable to the case and the criticisms of and the objections made to them on behalf of appellant, and we find no material error in those held by the court. The trial court did not err, we think, in refusing to hold proposition numbered 11 submitted by appellant. It does not state correctly the law applicable to the facts of this case.

That portion of proposition numbered 15 submitted by appellant which the court held contains a correct statement of the law. As to that portion of the proposition which the court refused to hold, it ignores the agreement between appellee and appellant, namely, that Benedict was not to carry on negotiations for a sale of the property in question. It presents a proposition which has no bearing upon the case made by the evidence. It was entirely immaterial under the evidence whether negotiations between Benedict and Denkmann were at any time at an end. In other words, the refused part of the proposition might be conceded, if it embraces any proposition of law, and still Benedict would be entitled to recover. For the reasons above given, proposition numbered 16, submitted by appellant, was properly refused.

We find no reversible error in the record, and the judgment is affirmed.

*Affirmed.*

Mr. Justice CHYTRAUS took no part in the consideration of this case.