### George C. Peterson Company, Appellee, v. Timken Roller Bearing Company, Appellant.

#### Gen. No. 26,459.

1. SALES—*effect of failure of seller to furnish a sufficient guaranty of performance as required by contract.* In an action for breach by defendant of a contract to purchase fuel oil, the defense set up in the affidavit of merits that plaintiff had failed to furnish, as required by the contract, a guaranty by a refining company able to furnish the quantities of oil contracted for but, instead, furnished a purported guaranty by a company which was insolvent and wholly unable to carry out its contract with plaintiff, was properly stricken out because the instrument was accepted by defendant and it was wholly immaterial whether the oil was furnished by such refining company or some other producer and the controversy did not arise as to oil which was delivered by plaintiff and accepted by defendant but because of defendant's refusal to accept the quantities of oil provided for in the contract.

2. PLEADING—*compliance of affidavit of merits with court rules.* An affidavit of merits, *held* to comply with the provisions of rule 15 (B) and (N) of the Municipal Court of Chicago.

3. CONTRACTS—*construction of language used.* A contract should be construed with a due regard for the surrounding circumstances, the nature of the subject-matter, the position of the parties and the apparent and known purposes for which it was made so that the languáge may be understood in the sense intended by the parties.

4. SALES—*contract based upon requirements of purchaser.* A contract for the purchase of fuel oil, containing a provision that if during any month the buyer's plant would not consume the minimum of 200,000 gallons the buyer should notify the seller, in writing, 10 days prior to the first day of such month, constituted a contract based upon the requirements of the buyer, and the giving of such notices had the effect of relieving the buyer from the obligation of accepting such minimum quantity as well as of relieving the seller from the obligation of shipping it.

5. SALES—*notice by buyer of nonrequirement of minimum quantity as election to pay damages.* Under a contract for the purchase of fuel oil which provided for notice by the buyer in case it would not require the minimum quantity during any month, the purchaser could not recover damages on the theory that the notices given under the contract amounted to an election by the buyer to pay damages instead of taking the oil, as the notices relieved the buyer from any obligation to accept the oil.

6. PLEADING—*allegation of notice, in affidavit of merits, that purchaser would not require oil contracted for, as presenting material issue of fact.* In an action upon a contract for the purchase of fuel oil, which contained a provision for the giving of notice to the seller in case the buyer should not require the minimum quantity of oil stated in the contract, a paragraph of defendant's affidavit of merits which alleged the giving of such notices presented a material issue of fact and the court erred in striking it.

Appeal from the Municipal Court of Chicago; the Hon. CHARLES A. WILLIAMS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1920. Reversed and remanded. Opinion filed November 29, 1921. Rehearing denied December 12, 1921.

NEWMAN, POPPENHUSEN, STERN & JOHNSTON and LYNCH, DAY, FIMPLE & LYNCH, for appellant; EDWARD R. JOHNSTON and HENRY JACKSON DARBY, of counsel.

WEST & ECKHART and THOMAS G. DEERING, for appellee.

MR. JUSTICE MORRILL delivered the opinion of the court.

Plaintiff, who is appellee here, brought suit in the municipal court of Chicago to recover damages against the defendant (appellant here) arising under the terms of a contract between the parties, which is set forth in the pleadings. Upon motion of the plaintiff the court struck out paragraphs 2 and 3 of defendant's affidavit of merits. This appeal involves a consideration of the propriety of the court's action in that behalf.

The statement of claim alleges that on May 20, 1918, the parties entered into a certain contract whereby plaintiff sold to defendant, and defendant purchased from plaintiff, for delivery over a period of 6 months, from October 1, 1918 to March 30, 1919, inclusive, 200,000 gallons per month of fuel oil of a certain grade at the price of $2.70 per barrel of 42 gallons. The contract is fully set forth in the statement of claim, but it is unnecessary to repeat the same in its entirety, as paragraph 8, relating to the conditions of the sale, is the only part of the contract which need be given consideration. This paragraph reads in part as follows:

"If during any month buyer's plant will not consume minimum above specified, Buyer shall notify Seller in writing ten days prior to first day of such month, and *Seller shall not be obligated to ship such quantity thereafter*. Shipments en route prior to receipt of such notification shall be accepted by Buyer, or disposed of by Seller for Buyer's risk and account. Buyer shall not purchase on open market or otherwise until quantities herein are accepted, and Buyer shall not resell nor transfer any of the oil specified without written consent of Seller.

"Shipments are subject to any delays, embargoes or restrictions imposed by any Government authority or by Railroads or Refiners. In such event Seller will notify Buyer and Buyer shall elect in writing five days thereafter, either (1) to furnish tank cars for Fuel

56 APPELLATE COURTS OF ILLINOIS.

G. C. Peterson Co. v. Timken Roller Bearing Co., 223 Ill. App. 53.

Oil shipments hereunder, or (2) to·pay Seller an additional two cents per gallon for such private cars as Seller may be able at such time to lease or provide; otherwise Seller shall not be obligated to supply, nor Buyer to accept, the unfilled portion of this contract thereafter.''

The statement of claim further alleges that at the time' of the execution of the agreement the plaintiff executed, and the defendant accepted, a document which is called a contract guaranty whereby plaintiff agreed to attach to the contract within 15 days from its date an affidavit guaranteeing delivery in accordance with the condition of the contract, "said affidavit to be made by a refinery" of sufficient capacity and equipment to fulfill the· same; and that within the said period of 15 days the plaintiff furnished to defendant, in compliance with said guaranty, a document which is designated as a "refiner's affidavit," signed by 46th Star Refining Company on June 1, 1918, but which is not verified; also that pursuant to this agreement 243,687 gallons of fuel oil were shipped by plaintiff and accepted and paid for by defendant, but that on October 28, 1918, and at divers times thereafter, defendant requested plaintiff to withhold further shipments of fuel oil under the contract; that plaintiff was at all times ready and willing to comply with said contract and repeatedly offered so to do and requested and demanded that the defendant furnish shipping directions and receive and accept the fuel oil covered by the terms of said contract, but that on April 15, 1919, defendant refused to accept any other or further shipments under the contract, and thereby violated its terms. The remaining allegations of the statement of claim relate to the price of the merchandise in question on April 15, 1919.

The affidavit of merits admits the making of the contract and the execution of the contract guaranty above noted. Paragraph 2 thereof alleges that plaintiff failed to perform the contract on its part in re-

spect to the terms of said contract guaranty which was attached to and made a part of the original contract of May 20, 1918, and that the writing furnished, signed by 46th Star Refining Company, does not comply with the terms of said guaranty for the reason that at the time of the delivery of said writing the 46th Star Refining Company did not have equipment and capacity sufficient to enable it to furnish the oil covered by the contract of May 20, 1918, but was at that time and at all times thereafter wholly out of business, insolvent and wholly unable to carry out its contract with plaintiff, all of which facts were well known to plaintiff at the time of the delivery of the writing, but did not come to the knowledge of defendant until the month of April, 1919, and that the so-called affidavit of 46th Star Refining Company was not furnished by plaintiff to the defendant in good faith in compliance with the terms of said guaranty, but was a mere sham and pretense secured by plaintiff for the purpose of showing an apparent compliance with the provisions of the guaranty and that none of the oil tendered or delivered by plaintiff to defendant was furnished by said 46th Star Refining Company.

Paragraph 3 of the affidavit of merits alleges, in substance, that at the time of making the contract of May 20, 1918, defendant was engaged in the filling of large orders for roller bearings for the United States government, and that the defendant throughout the year, whenever gas was available, used natural gas as a fuel in the operation of its plant; that during the winter months the supply of natural gas, for reasons beyond the control of defendant and dependent largely upon the state of the weather, was greatly diminished and sometimes entirely shut off; that during such period the defendant burned fuel oil in the operation of its plant but had a storage capacity at its plant for only 340,000 gallons of fuel oil, all of which facts were well known to plaintiff at the time the contract was made.

Paragraph 3 of the affidavit of merits then sets forth the provisions of paragraph 8 of the contract, part of which has already been quoted, and alleges that more than 10 days prior to December 1, 1918, and again more than 10 days prior to January 1, 1919, and again more than 10 days prior to February 1, 1919, and again more than 10 days prior to March 1, 1919, defendant notified plaintiff in writing, in accordance with the provisions of said paragraph 8, that defendant's plant would not consume for said respective months 200,000 gallons of oil or any part thereof, and thereby notified plaintiff in each instance not to ship to defendant the said 200,000 gallons of oil or any part thereof; that during these months and each of them defendant's plant would not consume 200,000 gallons of oil per month or any part thereof and that defendant had no storage capacity at its plant for said oil, by reason whereof plaintiff was not obligated to ship, and defendant was not obligated to accept or receive, any further shipments of oil from plaintiff under the agreement of May 20, 1918, after November 30, 1918.

Said paragraph 3 further denies that on October 28, 1918, or at any other time it requested plaintiff to withhold shipments of fuel oil under said original contract or to postpone or delay the shipments thereof. but alleges that defendant on October 28, 1918, and again more than 10 days prior to the first days of December, 1918, and January, February and March, 1919, respectively, notified the plaintiff not to make further shipments under the contract because of the fact that defendant's plant would not consume the same as above set forth, and further alleges that defendant did not on April 15, 1919, refuse to accept any further shipments of oil under the contract and that plaintiff at no time during the period covered by the contract ever notified defendant that it was holding fuel oil for the latter's use or that it was storing fuel

oil for the account of the defendant, or that it was selling the same on the open market for the account of defendant, and that plaintiff never in fact received any fuel oil from defendant other than the 243,687 gallons of said oil for which defendant had fully paid.

It is urged by appellant that paragraphs 2 and 3 of its affidavit of merits, the substance of which has been stated, presented good defenses to the entire claim of plaintiff. If this contention is correct it will be necessary to reverse and remand the case, and no consideration need be given to other questions discussed in the briefs of counsel. We are of the opinion that there was no error on the part of the trial court in striking out paragraph 2 of the defendant's affidavit of merits, which was based upon the alleged insufficiency of the so-called refiner's affidavit, for the reason that said instrument was accepted by defendant, and it is wholly immaterial whether the oil which defendant purchased and paid for was furnished by 46th Star Refining Company or some other producer. The controversy in this case does not arise from oil which was delivered by plaintiff and accepted by defendant. Under these circumstances we see no merit in the matters set forth in paragraph 2 of the affidavit of merits.

Whether or not a good defense is stated by paragraph 3 of the affidavit of merits must be determined by a consideration of the rules of the Municipal Court and the construction to be given paragraph 8 of the contract of May 20, 1918. Rules 1 to 23 of the Municipal Court of Chicago were made a part of the record. It is provided in rule 18, among other things, that defendant's affidavit of merits "shall specify the nature of such defense, whether by way of denial or by way of confession and avoidance, in such manner as to reasonably inform plaintiff of the defense that will be interposed at the trial."

It is provided in rule 15, among other things, that (B) "Every pleading shall contain a concise statement of the ultimate facts on which the party pleading re-. lies for his claim of defense, as the case may be, but not the evidence by which they are to be proved; (N) The denial of any material allegation shall constitute an issue; no other joinder of issue is necessary."

Paragraph 3 of the affidavit of merits complies with these requirements of the rules. It alleges in due form a legal defense to essential parts of the plaintiff's claim and should receive the consideration of the court, provided the matters therein set forth are available to defendant as defenses and are not based upon an erroneous construction of the contract between the parties. Paragraph 8 of the contract, which has already been quoted in part, among other things, provides, in substance, that in case defendant's plant during any month "will not consume" 200,000 gallons of fuel oil, then it became the duty of defendant to notify plaintiff of that fact 10 days prior to the first day of such month, and thereupon plaintiff should be relieved from any obligation to ship such quantity *thereafter*. It must be assumed that the above provision does not relate to the consumption capacity of defendant's plant, as it is admitted that the plant could consume 200,000 gallons per month, if needed, but relates rather to the requirements of defendant for each month covered by the contract. The contract should be construed with a due regard to the surrounding circumstances, the nature of the subject-matter, the position of the parties and the apparent and known purposes for which the contract was made, so that the language may be understood in the sense intended by the parties. *Close v. Browne,* 230 Ill. 228; *Adams v. Gordon,* 265 Ill. 91. Therefore the allegations contained in the first part of paragraph 3 of the affidavit of merits become material.

Said paragraph further presents an issue by the

denial that defendant even requested plaintiff to delay, postpone or withhold further shipments of fuel oil, all of which are material questions, and also presents a further issue by the denial of the allegation that it refused on April 15, 1919, to accept any further shipments. This issue is very important, as the date when the alleged breach of the contract took place is of vital importance in determining the amount of damages, if any, sustained by plaintiff.

The affidavit further alleges that more than 10 days prior to the first days of December, 1918, January, February and March, 1919, respectively, defendant notified plaintiff that its plant would not consume the 200,000 gallons in each month respectively as specified in the contract. The materiality of these averments depends upon the construction of the contract. Appellant contends that under a proper construction of paragraph 8 of the contract, upon the giving of such notice plaintiff was relieved from the obligation of shipping the minimum amount of 200,000 gallons for the month covered by the notice and that defendant was therefore relieved from the obligation of receiving or paying for that amount of oil. Appellee insists that the contract is explicit in requiring defendant to pay for a minimum amount of 200,000 gallons per month at the agreed price of $2.70 per barrel of 42 gallons, regardless of the fact that no oil had been shipped as a result of the notices mentioned.

In support of this contention appellee urges that the contract provision now under consideration simply embodied in the contract the substance of section 64 of the Uniform Sales Act (Cahill's Ill. St. ch. 121a, ¶ 67), which relates to the measure of damages in cases where the buyer wrongfully neglects to accept or pay for goods. Plaintiff contends in its original brief that the undertaking to pay for at least 200,000 gallons per month of fuel oil is absolute and in no manner dependent upon the delivery of that quantity.

The statutory provision mentioned applies when a defendant has wrongfully neglected or refused to pay for goods delivered or offered to be delivered, and if the undertaking of defendant to pay be independent of delivery by the plaintiff, then the question of wrongful refusal or neglect to accept cannot be an issue in the case or affect the liability of defendant.

This provision of the contract does not appear to be ambiguous. As has already been stated, every contract must be interpreted with reference to the circumstances under which the parties contract, and in the light of the objects to be accomplished. Its meaning must be ascertained from a consideration of the entire contract and all its provisions. We are of the opinion that the true meaning of paragraph 8 thereof can be ascertained from the language therein employed. The provision relieving the seller from the obligation of shipping in case notices are given 10 days prior to the first day of each month to the effect that the buyer's plant will not consume the amount specified seems to us to give the contract the character of what is ordinarily termed a requirement contract. If these notices had not been given, defendant would have been liable for the entire amount of 200,000 gallons per month at the agreed price, but the giving of the notices had the effect of relieving the defendant from that obligation as well as relieving plaintiff from the obligation of shipping. If this had not been the meaning of the contract intended by the parties it would have been wholly unnecessary to insert the provision to the effect that shipments en route prior to the receipt of such notices should be accepted by the buyer or disposed of by seller to buyer's risk and account. If the contract is to be construed as appellee contends, this provision would have been wholly unnecessary and is without meaning. These provisions seem to us to indicate the intention of the parties that the contract should be regarded as based upon the require-

ments of the defendant in case of the giving of the notices 10 days prior to the first day of each month during the contract period.

After exhaustive oral arguments in this case and the filing of two briefs by appellee based upon the foregoing theories, it is now urged by appellee in an additional document submitted to us that by the giving of the notices above mentioned defendant elected to pay damages instead of taking the oil for any given month and that he was obligated thereby to respond in damages. If this is now to be regarded as the basis of plaintiff's claim for recovery, it necessarily constitutes an abandonment of the theory urged in the original brief that there is an unconditional undertaking to pay for 200,000 gallons per month. Under plaintiff's last theory the life and vitality of its action would depend upon the wrongful refusal on the part of defendant to accept the goods delivered or offered to be delivered and not upon a breach of the independent promise to pay; but plaintiff cannot recover upon this theory, as the giving of the notices mentioned relieves defendant of any obligation to accept the goods.

Construing the contract in the light of the obvious intention of the parties as manifested therein, and giving effect to all of its provisions, we are of the opinion that the parties intended an agreement whereby plaintiff should furnish at the stipulated price a specified amount of oil, provided the same should be needed for the operation of defendant's plant. If not so needed, defendant might relieve itself of the obligation to purchase by giving the required notices and the giving of the notices would relieve plaintiff of the obligation to deliver. Paragraph 3 of the affidavit of merits alleges that the notices were given and thus presents an issue of fact material to the determination of the case.

It was held in an early case cited by appellee, in

substance, that all agreements must receive a reasonable interpretation according to the. intention of the parties at the time of their execution, if that intention can be ascertained from the langüage they have employed for that purpose. *Crabtree v. Hagenbaugh*, 25 Ill. 233. We are of the opinion that the intention of the parties can be ascertained from the language of the contract in this case and that a correct interpretation of the agreement would require the court to hear evidence that may be produced in support of the allegations contained in paragraph 3 of the complainant's affidavit of merits and that the court erred in striking out that paragraph.

Therefore the judgment of the municipal court will be reversed and the cause remanded.

*Reversed and remanded.*

GRIDLEY, P. J., and BARNES, J., concur.